UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

FLORIDIANS FOR SOLAR CHOICE, INC.,
A Florida not for profit corporation,

    Plaintiff,

v.

PCI CONSULTANTS, INC., a California corporation,
and ANGELO PAPARELLA, individually,

    Defendants.
_____/

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

Plaintiff, FLORIDIANS FOR SOLAR CHOICE, INC. ("FSC"), sues Defendants PCI CONSULTANTS, INC. ("PCI"), and ANGELO PAPARELLA ("Paparella") (collectively, the "Defendants") and alleges:

**I. Parties, Jurisdiction, and Venue**

1. This is an action for damages and equitable relief, exclusive of interest and costs, exceeding $75,000.

2. The Court has diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1331(a)(1) because the amount in controversy exceeds $75,000 and complete diversity exists between FSC, on the one hand, and the Defendants on the other hand. FSC is a citizen of Florida, and Defendants are all citizens of California.

3. FSC is a Florida not-for-profit corporation organized under the laws of Florida with its principal place of business in Florida.

4. PCI is a corporation organized under the laws of California, with its principal place of business in California.

5.  Paparella is over the age of 18 and a resident and citizen of California. He is not in the United States military. He is the chief executive officer of PCI.

6.  All of the Defendants are subject to personal jurisdiction in Florida pursuant to Fla. Stat. § 48.193(1)(a), § 193(1)(b), § 48.193(1)(g), and § 48.193(2). PCI breached the subject agreement in Florida. Paparella and PCI committed torts in Florida. Further, Defendants engage in substantial and not isolated activity in Florida.

7.  Venue is proper in Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to FSC's claims occurred in this District.

## II. Factual Background

8.  FSC is a not-for-profit company formed for the purpose of proposing and promoting a constitutional amendment to Florida's Constitution relating to the third-party sale of solar power to citizens of the state of Florida.

9.  FSC entered into a contract with PCI dated January 5, 2015. ("Contract 1") (*Ex. 1*). Pursuant to the Contract, PCI agreed to provide petition services and obtain petition signatures for FSC on specific terms and conditions.

10. The first step in the process is to obtain 80,000 signatures on the petition in order to obtain Supreme Court review and approval of the proposed language of the Amendment. Contract 1 related to the first 80,000 signatures. (*See* Ex. 1, Contract 1, Paragraph 2, "Engagement").

11. Those signatures were provided, PCI was paid in full, and the Amendment reached the threshold for Florida Supreme Court review. FSC awaited approval of its Amendment ballot by the Florida Supreme Court.

12. FSC was also collecting its own petition signatures. PCI was again engaged to circulate petitions and obtain signatures, and on June 5, 2015 a second contract ("Contract 2") (*Ex. 2*) was entered into between the parties to obtain the requisite signatures to place the matter on the ballot. (*See* Ex. 2, Paragraph 2, "Engagement").

13. The Contract also provided that PCI would hire employees at its own expense. (*Ex. 2* at Paragraph 2). Indeed, Contract 2 does not provide for additional expenses to be paid beyond the per signature charges. Further, Section 17 of Contract 2 provides that: "This Agreement may be modified only by written instrument executed by the parties hereto."

14. On or about September 1, 2015, PCI and FSC agreed to increase the fee per signature paid by FSC to PCI from $2.65 per signature to $4.00 per signature.

15. On or about that date, PCI and FSC discussed a signature fee agreement that included a third party paying for solar education, and FSC's signature fee would not exceed $5.25 per signature.[1]

16. On or about October 22, 2015, PCI and FSC discussed the payment of expenses required to expedite the petition gathering process. PCI and FSC did not agree to all of the additional expenses. ***No written amendment to the contract was drafted, let alone signed by both parties.*** FSC was provided a spreadsheet ("Spreadsheet 1") (*Ex. 3*) by PCI with expenses necessary to expedite the petition gathering process moving forward. FSC agreed only to pay "weekly expenses" and "travel in" and "travel out" expenses. The Expenses agreed to by FSC were paid. FSC advised PCI and Paparella that it did not agree to the other expenses.

17. The Medical Marijuana ballot initiative is also a client of PCI. PCI and Paparella then represented to FSC that they were incurring some of these additional expenses for both the FSC ballot initiative and the Medical Marijuana ballot initiative and that Medical Marijuana

---

[1] On October 27, 2015, PCI entered into a contract with the Southern Alliance for Clean Energy providing that PCI would provide citizen education on solar power.

3

ballot initiative would be paying an equal but separate share of expenses to support the joint expenses of both campaigns.

18. FSC relied upon these representations in agreeing to the expenses that FSC agreed to incur, that is, only some of the additional expenses were agreed to and those were agreed to because Paparella represented that Medical Marijuana would be paying an equal share.

19. FSC learned from Paparella (for the first time) in the first week of November that Medical Marijuana had refused to share the expenses with FSC. Paparella grew increasingly anxious and demanded that the expenses for FSC increase because of Medical Marijuana's refusal to fully share expenses. FSC asked for clarification several times from Paparella as to the level of increased expenses being contemplated.

20. On or about November 19, 2015, PCI and Paparella informed FSC that even more significant, additional and unexpected expenses would have to be paid by FSC to expedite the petition gathering process. ("Spreadsheet 2") (***Ex. 4***) The expenses were well beyond what FSC agreed to pay, and as a result, FSC terminated Contract 2. PCI then sent a final invoice ("Final Invoice") (*See* email and invoice attached as ***Ex. 5***) .

21. Contract 2, Paragraph 5(a), also provides that PCI will deliver signed petitions to the appropriate counties for recordation.

22. PCI and Paparella represented that they were holding 212,000 signed petitions and would not submit the petitions until PCI's final invoice was paid in full. Given that the Final Invoice reflected a final week collection of 59,967, PCI has been withholding petitions for some time and therefore not delivering petitions to the appropriate counties.

23. The withholding of signed petitions constituted a material breach of the contract. Until the Final Invoice, Ex. 5, there was no question that FSC had fully paid all invoices presented on a weekly basis.

24. PCI concealed that it had withheld these signed petitions. The continued invoicing by PCI induced FSC into believing that PCI was complying with its contractual obligations.

25. The invoices constitute an affirmative representation to FSC that the contractual obligations relating to the signed petitions billed for were completed, making payment due.

26. As PCI's contractual obligation to deliver the signed petitions to the appropriate counties was not fulfilled, FSC has overpaid for the services of PCI, in an amount equivalent to the fees and costs related to all 212,000 signed petitions.

27. In addition, the consideration for Contract 2 failed in its entirety (and all payments made become FSC damages) as the failure to deliver the signed petitions to the counties rendered it impossible for FSC to have its proposed Amendment placed on the ballot.

28. FSC has paid in full the signature fee, shipping signatures to counties, and volunteer signature checking consistent with Contract 2 Paragraph 5 (a), and as stated in the final invoice, and fully paid expenses to which it agreed. Yet, PCI and Paparella continue to hold 212,000 FSC petitions hostage.

29. As the signed petitions were paid for in full, PCI and Paparella have no right to withhold those petitions. The petitions are the exclusive property of FSC.

## Conditions Precedent

30. All conditions precedent to the filing of this action have been fulfilled, satisfied, or excused.

31. FSC has retained the undersigned counsel to represent it in this case and is obligated to pay its counsel reasonable attorneys' fees.

## COUNT I: BREACH OF CONTRACT AGAINST PCI

32. FSC realleges paragraphs 1 through 31, inclusive.

33. FSC entered into Contract 2 with PCI.

34. PCI has breached the terms of the Contract by:

   a. Failing to deliver signed petitions to the counties;

   b. Failure to provide reasonable backup to expenses agreed to by FSC;

   c. Charging FSC for expenses incurred by another client, *i.e.*, the Medical Marijuana ballot initiative; and

   d. Attempting to charge additional fees and costs, and thereby amend the contract without providing a writing signed by both parties, as required by the Contract.

35. As a result of PCI's breaches, FSC has suffered damages.

36. As a result of PCI's breaches, the consideration for the contract has failed in its entirety and FSC has suffered damages.

Wherefore, FSC demands judgment in its favor against PCI, awarding FSC consequential and compensatory damages, prejudgment interest, costs, and all other relief that is just and proper.

**COUNT II:  FRAUD IN THE INDUCEMENT AGAINST PCI AND PAPARELLA**

37. FSC realleges paragraphs 1 through 31, inclusive.

38. PCI and Paparella misrepresented that the signed ballots would be turned in to the counties.

39. PCI and Paparella misrepresented that the signed ballots had been turned into the counties as collected and paid for.

40. PCI and Paparella fraudulently concealed that the ballots had not been turned in to the counties.

6

41. PCI and Paparella misrepresented that the Medical Marijuana ballot initiative had agreed to pay for their share of the expenses being incurred.

42. PCI and Paparella made these representations and concealed these facts intending that FSC rely upon them, by continuing to pay the invoices and expenses.

43. FSC justifiably and reasonably relied on PCI's and Paparella's misrepresentations and concealment of material facts, which the defendants had a duty to disclose.

44. PCI's and Paparella's fraudulent representations and concealment have caused FSC to suffer damages.

45. PCI's and Paparella's actions were undertaken intentionally and with intent to force FSC to ultimately pay for expenses to which PCI had no right to collect from FSC.

46. PCI and Paparella engaged in willful misconduct, which constituted willful and wanton disregard of FSC's rights.

Wherefore, FSC demands judgment in its favor against PCI and Paparella, awarding FSC compensatory damages, punitive damages, pre-judgment interest, costs, and all other relief that is just and proper.

### COUNT III:   CONVERSION AGAINST PCI AND PAPARELLA

47. FSC realleges paragraphs 1 through 31, inclusive.

48. PCI's and Paparella's unauthorized appropriation of FSC's petitions, and the withholding of same for weeks rather than providing them weekly, as agreed, was for the purpose of forcing FSC to pay for expenses to which it did not agree, and constitutes conversion.

49. PCI and Paparella have wrongfully and intentionally taken FSC's signed petitions with the intent to exercise ownership inconsistent with FSC's rights of possession.

50.     PCI's, and Paparella's above-described conduct has caused FSC to suffer damages.

51.     PCI and Paparella engaged in willful misconduct, which constituted willful and wanton disregard of FSC's rights.

Wherefore, FSC demands judgment in its favor against PCI, and Paparella, awarding FSC compensatory and consequential damages, the imposition of a constructive trust over the signed petitions taken by PCI, and Paparella and all those acting under their control, punitive damages, pre-judgment interest, costs, and all other relief that is just and proper.

## COUNT IV:  UNJUST ENRICHMENT AGAINST PCI

52.     FSC realleges paragraphs 1 through 31, inclusive.

53.     FSC has conferred a substantial benefit on PCI by paying PCI, and PCI has knowingly accepted the benefits of FSC's funds.

54.     It would be inequitable if PCI were allowed to use and keep FSC's funds when it did not provide the requisite signatures it collected and agreed to provide.

Wherefore, FSC demands judgment in its favor against PCI, awarding FSC damages, prejudgment interest, costs, and all other relief that is just and proper.

Dated: December 23, 2015

LUBELL ROSEN, LLC
*Attorneys for Plaintiff FSC*
200 South Andrews Avenue
Suite 900
Fort Lauderdale, FL 33301
Telephone: 954-880-9500
Facsimile:  954-755-2993

By:___/s/ *Marshall A. Adams*_____
    Marshall A. Adams, Esquire
    Florida Bar No.: 712426
    MAA@LubellRosen.com
    Bernard M. Cassidy, Esquire
    BMC@LubellRosen.com

        Secondary emails
        Gary@LubellRosen.com
        Nadine@LubellRosen.com

        And

By: */s/ Scott L. Cagan*
   Scott L. Cagan, Esquire
   Florida Bar No.: 822681
   GRAYROBINSON, P.A.
   401 East Las Olas Blvd., Suite 1000
   Fort Lauderdale, Florida 33301
   Telephone: (954) 761-8111
   Facsimile: (954) 761-8112
   Email: scott.cagan@gray-robinson.com

   *Co-Counsel for Plaintiff Floridians for Solar Choice, Inc.*