# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 15-cv-62688-BLOOM/Valle

FLORIDIANS FOR SOLAR
CHOICE, INC. a Florida not for
Profit corporation,

Plaintiff,

v.

PCI CONSULTANTS, INC. and
ANGELO PAPARELLA,
individually,

       Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court upon three motions: Defendants PCI Consultants, Inc. and Angelo Paparella's Motion to Vacate Arbitral Award, ECF No. [17], filed on October 18, 2017; Plaintiff Floridians for Solar Choice, Inc.'s ("FSC") and Claimant in Arbitration Southern Alliance for Clean Energy, Inc.'s ("SACE," together with FSC, "Solar") Motion to Confirm Arbitration Award, with Supporting Memorandum of Law, ECF No. [20] ("Motion to Confirm"), filed on November 1, 2017; and a separately filed motion entitled "Defendant PCI's Supplemental Memorandum in Support of the Motion to Vacate", ECF No. [29], filed on November 21, 2017. The Court has reviewed the motions, the filings in support and opposition, the record, and is otherwise fully advised. For the reasons stated below, the Motion to Confirm, ECF No. [20] is granted and the Motion to Vacate, ECF No. [17], and Supplemental Motion to Vacate, ECF No. [29] (together, the "Motions to Vacate"), are denied.

## I.     PROCEDURAL BACKGROUND

Plaintiff FSC initially filed its Complaint on December 23, 2015 against Defendants PCI Consultants, Inc. ("PCI"), and PCI's principal, Angelo Paparella ("Paparella").  ECF No. [1]. FSC amended its complaint on January 13, 2016, ECF No. [8] ("Amended Complaint").  In the Amended Complaint, FSC alleged causes of action for breach of contract, fraud in the inducement, conversion, and unjust enrichment against PCI, and fraud in the inducement and conversion against Paparella.  *Id.* at 7–9.  Simultaneous to filing its Complaint, FSC filed a Motion to Compel Arbitration, ECF No. [4], arguing that the claims asserted relate to contracts under which Defendants agreed to arbitrate.  Defendants opposed the motion.  ECF No. [7].  The Court granted the motion to compel on January 22, 2016 and administratively closed the case. ECF No. [11].

On October 13, 2017, Defendants filed their Motion to Reopen Case, ECF No. [13], advising the Court that the parties had participated in an arbitration administered by the American Arbitration Association ("AAA") in April 2017.  Defendants further advised the Court that  the "sole arbitrator issued a non-final award on July 20, 2017 and on October 10, 2017, the arbitrator, retired Broward Circuit Court Judge Jeffrey Streitfeld ("Arbitrator"), issued a 'Final Award' adopting the non-final award."  *Id.* at 1.  In the Motion to Reopen, Defendants stated that they planned to move to vacate the award.  The Court granted the Motion to Reopen.  ECF No. [16].

Now before the Court are the Motions to Vacate, ECF Nos. [17] and [29], as well as Plaintiff's Motion to Confirm, ECF No. [20], along with their attached exhibits and notices, as follows:

1. Defendants PCI Consultants, Inc. and Angelo Paparella's Motion to Vacate Arbitral Award, ECF No. [17];

2. Declaration of Christian S. Molnar in Support of PCI Consultants, Inc.'s Petition to Vacate the July 20, 2017 and October 10, 2017 Arbitration Awards, ECF No. [17-1];

3. Declaration of Angelo Paparella in Support of PCI Consultants, Inc.'s Petition to Vacate the July 20, 2017 and October 10, 2017 Arbitration Awards, ECF No. [17-2];

4. Declaration of Levi Lesches in Support of PCI Consultants, Inc.'s Petition to Vacate the July 20, 2017 and October 10, 2017 Arbitration Awards, ECF No. [17-3] and attached Exhibits A-O, ECF No. [17-4];

5. Notice of Filing of Arbitration Hearing Transcripts in Support of the Motion to Vacate Arbitral Award (ECF No. 17), ECF No. [18], and attached hearing transcripts for April 25, 2017 (ECF No. [18-1]), April 26, 2017 (ECF No. [18-2]), and April 28, 2017 (ECF No. [18-3]);

6. Florida for Solar Choice, Inc.'s and Claimant in Arbitration, Southern Alliance for Clean Energy, Inc.'s Memorandum in Opposition to PCI Consultant, Inc.'s Motion to Vacate Arbitral Award, ECF No. [22], and attached exhibits, ECF Nos. [22-1]–[22-19];

7. Reply in Support of Motion to Vacate Arbitral Award, ECF No. [23], and attached exhibits, ECF Nos. [23-1]–[23-7];

8. Defendant PCI's Supplemental Memorandum in Support of the Motion to Vacate, ECF No. [29], and attached exhibits, ECF Nos. [29-1]–[29-5];

9. Solar Parties' Response to PCI Consultants, Inc.'s Supplemental Memorandum in Support of Its Motion to Vacate, ECF No. [31];

10. Defendant PCI Consultants' Rebuttal to Plaintiffs' Opposition to the Supplemental Memorandumrandum [sic] in Support of Motion to Vacate, ECF No. [32];

11. Plaintiff Floridians for Solar Choice, Inc.'s and Claimant in Arbitration, Southern Alliance for Clean Energy, Inc.'s Motion to Confirm Arbitration Award, with Supporting Memorandum of Law, ECF No. [20], and attached exhibits, ECF Nos. [20-1]–[20-5] and ECF No. [21-1];

12. Defendants [sic] Response in Opposition to the Solar Parties' Motion to Confirm Arbitration Award, ECF No. [25]; and

13. Solar Parties' Reply to PCI Consultants, Inc.'s Response in Opposition to Solar Parties' Motion to Confirm Arbitration Award, ECF No. [30], and attached exhibits, ECF Nos. [30-1] and [30-2].

In their Motions, Defendants make five arguments in favor of vacatur. First, Defendants argue that the award must be vacated because Solar employed "fraud and/or undue means" to procure an arbitration award in its favor. ECF No. [17] at 12. Second, Defendants argue that the Arbitrator, lacked jurisdiction to enter an award exceeding one million dollars. *Id.* at 18. Third, Defendants argue that the Arbitrator had "irrefutable bias" against Defendants. *Id.* at 21. Fourth, Defendants claim that the Arbitrator failed to hear evidence related to Solar's "surprise damages claim." *Id.* at 22. Lastly, Defendants argues that the AAA Rules barred entry of the October 10, 2017 final award ("October Final Award") in favor of Solar because the July 20, 2017 award ("July Award") was a "final award" that terminated the Arbitrator's jurisdiction. *Id.* at 23.

On November 21, 2017, Defendants filed a Supplemental Memorandum in Support of the Motion to Vacate, ECF No. [29]. There, Defendants further argue that the July Award was a "final award" precluding entry of the October Final Award because (1) according to an email

from the AAA to the parties, after the July Award was issued, AAA administratively closed the case, ECF No. [29-1], and (2) the file name of the uploaded PDF of the July Award on the AAA's Webfile System read "Final Award." ECF No. [29-5] at 3. Defendants additionally argue that Solar conceded that the July Award was a final award because after the Arbitrator issued the October Final Award, Plaintiff moved to reopen the case to correct a typographical error in the October Final Award. ECF No. [29] at 7–8.

In response, Solar argues that the Arbitrator's award is supported by the record evidence and that Defendants have failed to meet their burden on their claim of fraud or undue means under *Bonar v. Dean Witter Reynolds Inc.*, 835 F.2d 1378 (11th Cir. 1988) and on their claim of arbitrator bias under *Gianelli Money Purchase Plan & Tr. v. ADM Inv'r Servs., Inc.*, 146 F.3d 1309 (11th Cir. 1988). *See* ECF No. [22]. Solar further argues that the Arbitrator had jurisdiction to issue an award above one million dollars and enter the October Final Award. *Id.*

On November 1, 2017, Solar moved to confirm the arbitration award. ECF No. [20] ("Motion to Confirm"). In the Motion, Solar argues that the Court should confirm the July Award, as amended by the October Final Award and November 1, 2017 Corrected Final Award ("Award"), based on the presumption of validity under the FAA, which Defendants have failed to refute. Defendants oppose the Motion to Confirm, reiterating their arguments in the Motions to Vacate and also arguing that the Motion to Confirm is mooted by Defendants' Motions to Vacate, that the Court should apply the " 'no-blue-penciling rule . . . [applied by n]umerous states (although, admittedly, not Florida) [to] make overly-broad noncompete agreement unenforceable *in toto*" to the Award, and that Plaintiff's Motion to Confirm is procedurally improper because it is missing required documents under 9 U.S.C. § 13. ECF No. [25].

## II.    FACTUAL BACKGROUND

This case stems from a failed initiative to qualify a solar energy constitutional amendment for the 2016 election in Florida.  ECF No. [22-12].  Based on the Court's grant of the motion to compel arbitration, ECF No. [11], FSC filed a Demand for Arbitration with the AAA against Defendants PCI and Paparella seeking damages of $500,000–$1,000,000, plus punitive damages, attorneys' fees, interest, and arbitration costs.  ECF No. [20] at 3.  Defendants subsequently filed a separate Statement of Claim with AAA seeking $212,479.67, plus punitive damages, attorneys' fees, interest, and arbitration costs against FSC, as well as two of FSC's officers, Stephen Smith ("Smith") and George Cavaros, and Southern Alliance for Clean Energy Action Fund, Inc. ("SACEAF").  ECF No. [20] at 3.  The two matters were consolidated, and during the pendency of the arbitration, Defendants added SACE as a respondent.  *Id.*  SACE counterclaimed against PCI and Paparella.  *Id.*

The Arbitrator held a three-day hearing on April 25, 26, and 28, 2017 during which the parties presented witness testimony and numerous exhibits.  On July 20, 2017, the Arbitrator issued the July Award in favor of Solar.  ECF Nos. [17-4], [20-1] ("July Award").  The following facts were found by the Arbitrator or elicited through uncontroverted testimony, unless otherwise noted:

FSC is a not-for-profit corporation formed for the purpose of qualifying a solar energy amendment in Florida's general election in 2016.  ECF No. [17-4] at 2.  PCI is a "national leader in obtaining signed petitions for ballot initiatives."  *Id.* at 3.  In order to be included on the ballot, Florida law required FSC to seek prior approval by the Supreme Court of Florida of the

amendment's language and nearly 700,000 signed voter petitions. Arbitration Transcript ("Tr.")[1] at 12, 41, 80, 261, 282–83. The parties entered into several contracts through which PCI agreed to obtain a fixed amount of signed petitions for the solar energy initiative based on a price per signature. ECF No. [17-4] at 2. The Arbitrator highlighted three provisions of the contracts that he found of particular importance:

1. PCI was to be paid per signature, with all signature collection expenses to be the responsibility of PCI;

2. Amendments to the contracts must be made in writing and signed by the parties;

3. Until the final invoice was paid in full, the signed petitions remained the property of PCI.

*Id.* The Arbitrator found that the first two contracts between the parties—which included amendments agreed to through an exchange of emails—were fully performed: PCI collected the required number of signatures and FSC paid PCI for those signatures on a per-signature basis. Under the third contract dated June 5, 2015, PCI agreed to collect 5,000 signatures per week at a cost of $2.65 per signature. *Id.* at 3; *see also* Tr. at 59–60; 250–51; 260–61; 266.

In late summer while the parties were still waiting for approval from the Supreme Court of Florida, a competing constitutional amendment sponsored by the utility companies was introduced. ECF No. [17-4] at 2. In response, the Arbitrator found that the parties amended the June 5, 2015 agreement through a series of email exchanges to increase PCI's signature collection rate to 15,000 signatures per week. *Id.* at 3–4; *see also* Tr. at 281.

---

[1] Defendants filed the transcripts from the arbitration in three separate files, one for each day of the arbitration. *See* ECF Nos. [18-1], [18-2], and [18-3]. Because the three files are numbered continuously, the Court will refer to the sequential page numbers of the transcript, and not to the page numbers assigned by the Court's CM/ECF filing system.

During the fall, after the Supreme Court approved the amendment language, PCI informed FSC that the price per signature agreed to in the June 5, 2015 contract was increasing from $2.65 to $4.00, and then again to $5.25, and that FSC would be responsible for substantial additional expenses related to the travel, housing, and per diem expenses for independent contractors hired to collect signed petitioners ("Petitioner Expenses"). *Id.* at 3. Defendants memorialized this demand for a price increase in a spreadsheet ("October Spreadsheet"). Tr. 86–90; 96–97; 270–71.

For approximately one month, between October 22, 2015 and November 18, 2015, PCI submitted invoices—which FSC paid without objection—that included both the per signature charge of $5.25, plus the additional Petitioner Expenses contained in the October Spreadsheet. *Id.* at 4. During this time, Plaintiff also engaged SACE to help educate voters regarding the competing solar energy petitions and defray some of the rising costs. *Id.*; *see also* Tr. at 295, 306. According to the testimony during the hearing, the parties agreed that FSC and SACE would split the $5.25 price per petition, with FSC paying $2.25 for the signatures and SACE paying $3.00 for voter education. Tr. at 160–62; 176–77. In furtherance of that agreement, on October 27, 2015 SACE signed a separate contract with PCI under which PCI agreed to "use its network of independent contractors to educate Florida citizens about the benefits of solar electric power" and SACE would pay $3.00 for each "educational impression." ECF No. [22-7] Tr. at 162–166.

On November 18, 2015, Defendants sent a new expense spreadsheet to Solar, once again increasing the required Petitioner Expenses ("November Spreadsheet"). ECF No. [17-4] at 3. In the email containing the spreadsheet, Paparella told FSC's principal, Steven Smith, "don't have a heart attack." Tr. at 132, 298. The following day, Solar informed Defendants that it could not

fund the initiative at the levels proposed in the November Spreadsheet and terminated the ballot initiative. ECF No. [17-4] at 3. At the time of termination, Solar had paid all costs and Petitioner Expenses as reflected in the October Spreadsheet, including $5.25 per petition for 217,000 petitions in PCI's custody, plus $130,000 in Petitioner Expenses for those petitions. *Id.* Solar had not paid any additional Petitioner Expenses as reflected in the November Spreadsheet. *Id.* After termination, PCI demanded that Solar pay $212,479 in Petitioner Expenses per the November Spreadsheet in order to receive the 217,000 signed petitions it had already paid for. *Id.* at 4–5. According to the Arbitrator's findings, after Solar refused, the dispute took on "a nasty tone," *id.* at 4, leading to this litigation.

Meanwhile, throughout 2015, Defendants had another client that was simultaneously seeking to qualify a constitutional amendment in Florida for medical marijuana. Paparella testified that he had worked on several medical marijuana initiatives in the past, had a personal relationship with the individuals running the medical marijuana campaign in Florida, and considered medical marijuana an issue that he "was passionate about." Tr. at 217–19. PCI charged the medical marijuana campaign a fixed per-petition price of $2.25.[2] *See* Tr. at 190, 286. Because both the medical marijuana campaign and the solar campaign needed petitioners on the ground to gather signatures, and petitioners typically carry more than one petition, there were at least some discussions between the principals of Solar, PCI, and the medical marijuana campaign regarding sharing the Petitioner Expenses. The parties and non-party witnesses presented conflicting testimony regarding the content, timing, and agreements reached during

---

[2] Paparella testified that he lost money on the medical marijuana campaign. Tr. at 219. Some testimony suggested that the medical marijuana campaign agreed to pay some expenses "when it was able to," but no evidence was introduced to support any contractual obligation to cover Petitioner Expenses. *See e.g.*, Tr. at 91–92, 110–111, 188.

these discussions.  Tr. at 87–89, 96–97, 103–05, 124, 270–71, 545.  Paparella testified that Solar understood that the expenses in the October 2015 spreadsheet only reflected half the Petition Expenses Solar would be required to pay.  He further testified that Solar orally agreed to pay all the expenses incurred by both campaigns—that is, double the expenses listed in the October 2015 spreadsheet—with the understanding that the medical marijuana campaign would pay what it could towards the Petitioner Expenses on an *ad hoc* basis.  Paparella testified that Smith understood that Solar would "subsidize" the medical marijuana campaign.  ECF No. [17-4] at 5; *see also* Tr. at 124.

Smith testified that he never understood the October 2015 spreadsheet to represent half of the Petitioner Expenses and never agreed to pay the medical marijuana campaign's expenses or subsidize that campaign.  Tr. at 270–71.  Smith further testified that when the expenses dispute arose, he tried to resolve the issue with Paparella amicably. For example, he stated in an email: "Please help me understand why we should be responsible for 374,479 in expenses."[3]  Tr. at 407.

The Arbitrator found Paparella's testimony not credible.  Accordingly, the Arbitrator concluded that there was no oral agreement for Solar to cover either medical marijuana's expenses or expenses that were double those listed in the October spreadsheet.  ECF No. [17-4] at 5.  Specifically, the Arbitrator found: "It is clear to me that PCI has sued the Solar parties for money owed to it by its medical marijuana client." *Id.*  Because there was no agreement to pay the additional Petitioner Expenses in the November Spreadsheet, the Arbitrator found that Defendants breached the contract when they retained the 217,000 paid-for petitions.  Thus, Solar

---

[3] Although the Arbitrator additionally received extensive testimony regarding the legitimacy of the expenses PCI's vendors claimed they incurred, the parties agreed that PCI did actually incur these expenses because it fully reimbursed its vendors for the claimed expenses.

was entitled to judgment on its breach of contract claim in the total amount paid for the retained petitions per the June 5, 2015 contract as modified by the October Spreadsheet, totaling $1,271,250. The Arbitrator further awarded interest from the date of initial filing and unspecified reasonable attorneys' fees and costs which the parties stipulated would be "reserved for post-trial resolution by the Arbitrator." *Id.* at 6; ECF No. [22-12] at 5.

The Arbitrator subsequently received briefing on attorneys' fees, issued the October Final Award, and issued the Corrected Final Award on November 1, 2017. ECF No. [21-1]. In the October Final Award, the arbitrator awarded to Solar, in addition to the $1,271,250 contained in the July Award, prejudgment interest of $230,218.34, costs of $18,277, and attorneys' fees of $340,000. ECF No. [20-2]. The November Final Award corrected a typographical error in the October Final Award. ECF No. [21-1].

## III.  MOTION TO VACATE

### A.  LEGAL STANDARD

A motion to vacate is not a mechanism to appeal or otherwise challenge the merits of a dispute conclusively determined in arbitration. Indeed, Congress carefully circumscribed the narrow and exclusive grounds for vacatur to prevent arbitration from becoming "merely a prelude to a more cumbersome and time-consuming judicial review process." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568–69 (2013) (quoting *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)). Thus, on a motion to vacate an arbitration award under 9 U.S.C. § 10(a), a district court "may revisit neither the legal merits of the award nor the factual determinations upon which it relies." *Wiand v. Schneiderman*, 778 F.3d 917, 926 (11th Cir. 2015) (finding the "entire argument for vacatur is based on the weight of the evidence presented, and that is simply beyond this court's—or the district court's—power to review"); *Aviles v.*

*Charles Schwab & Co.*, 435 F. App'x 824, 829 n.7 (11th Cir. 2011) (per curiam) ("[A]n incorrect

legal conclusion by an arbitrator [is] no ground for setting aside an arbitration ruling."). Indeed,

"as long as the arbitrator is even arguably construing or applying the contract and acting within

the scope of his authority, that a court is convinced he committed serious error does not suffice to

overturn his decision." *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29,

38 (1987) (citation omitted).

The FAA permits a district court to vacate an arbitration award under only four exclusive

circumstances:

> (1) where the award was procured by corruption, fraud, or undue
> means;
>
> (2) where there was evident partiality or corruption in the
> arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to
> postpone the hearing, upon sufficient cause shown, or in refusing
> to hear evidence pertinent and material to the controversy; or of
> any other misbehavior by which the rights of any party have been
> prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly
> executed them that a mutual, final, and definite award upon the
> subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4); *see also Hall St.*, 552 U.S. at 583 (holding that Sections 10 and 11 of the

FAA are the "exclusive" grounds for judicial review of vacatur and modification of arbitration

awards). Because "[j]udicial review of arbitral awards is extremely limited," *VFM Leonard, Inc.*

*v. ICE Portal, Inc.*, 2015 WL 11216727, at *5 (S.D. Fla. July 23, 2015) (citation omitted), a

party seeking to vacate an award under 9 U.S.C. § 10(a) bears a heavy burden. *See Scott v.*

*Prudential Sec., Inc.*, 141 F.3d 1007, 1014 (11th Cir. 1998), *overruled on other grounds by Hall*

*St.*, 552 U.S. at 576; *see also Fernandez v. Wells Fargo Secs., LLC*, 2014 WL 11776952, at *3

(S.D. Fla. Dec. 24, 2014). Defendants challenge the Award on all four grounds permissible under the FAA. The Court will address each ground in turn.

### B. ANALYSIS

#### 1. Fraud and Undue Means

Under Section 10(a)(1), a district court may vacate an award based on corruption, fraud, or undue means. To vacate an arbitration award based on fraud, the movant must fulfill a three-part test articulated by the Eleventh Circuit in *Bonar v. Dean Witter Reynolds, Inc*., 835 F.2d 1378 (11th Cir. 1988). In particular, *Bonar* requires: 1) that "the movant establish fraud by clear and convincing evidence;" 2) that "the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration;" and 3) that "the fraud materially related to an issue in the arbitration." *Id.* at 1383. To vacate based on undue means, a party must demonstrate intentional misconduct that "measures equal in gravity to bribery, corruption, or physical threat to an arbitrator." *Liberty Sec. Corp. v. Fetcho*, 114 F. Supp. 2d 1319, 1321 (S.D. Fla. 2000).

In the Motions, Defendants argue that the Court should vacate the Award based on Solar's alleged fraud on the Arbitrator by repeatedly representing that it sought damages of only $487,588.50 during the hearing—the total paid by FSC for the 217,000 petitions at $2.25 per petition, exclusive of expenses and the $3.00 per petition paid by SACE—and then in post-hearing briefing arguing that it sought damages for the full contract price. ECF No. [17] at 12–18.

Defendants fail to meet their burden to demonstrate by clear and convincing evidence that Solar defrauded or used undue means to influence the Arbitrator. Defendants' challenge—cloaked in the nomenclature of fraud—amounts to no more than vehement disagreement with the Arbitrator's findings on the breach of contract claim. A change in damages theory, while vexing

13

to Defendants, does not amount to clear and convincing evidence of fraud or undue means. *Cf. Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir. 1988) (finding fraud where expert testified to false credentials). Moreover, even if the Court considered Solar's change in damages theory sufficient to demonstrate fraud or undue means, "vacatur is precluded"—as here—"where the arbitrators had before them all material information relating to the alleged undue means." *Liberty*, 114 F. Supp. 2d at 1322.

Defendants cite to authority from Florida's state courts support of their argument for fraud. ECF No. [17] at 13–14. However, not only are these cases inapposite because they fail to apply Section 10(a)(1) under the FAA; they also lend no support to Defendants' argument because no case holds that a change in damages theory in post-trial briefing supports a theory of fraud. *See Boca Burger, Inc. v. Forum*, 912 So. 2d 561, 565 (Fla. 2005); *Addison v. Brown*, 413 So. 2d 1240, 1240 (Fla. 5th DCA 1982), *aff'd sub nom. Lubin v. Dist. Court of Appeal Fifth Dist.*, 428 So. 2d 663 (Fla. 1983); *Hays v. Johnson*, 566 So. 2d 260 (Fla. 5th DCA 1990). Accordingly, Defendants have not met their burden on the first factor of the *Bonar* test and the Motion to Vacate based on fraud or undue means must be denied.[4]

### 2. Exceeded Authority and Lack of Jurisdiction

Under Section 10(a)(4), a district court may vacate an arbitration award when an arbitrator exceeds his authority or executes his duties as an arbitrator so imperfectly to deprive the parties of a definite and final resolution of the dispute. 9 U.S.C. § 10(a)(4). Only if "the arbitrator act[s] outside the scope of his contractually delegated authority—issuing an award that

---

[4] Having found that Defendants have failed to demonstrate clear and convincing evidence of fraud, the Court further declines Defendants' invitation to vacate the Award on public policy grounds. *See* ECF No. [17] at 18 (arguing the Court should vacate the award on public policy grounds because of "arbitral fraud").

simply reflects his own notions of economic justice rather than drawing its essence from the contract—may a court overturn his determination." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (citation and alternations omitted).  Thus, "[i]t is not enough to show that the arbitrator committed an error—or even a serious error." *Johnson v. Directory Assistants Inc.*, 797 F.3d 1294, 1302 (11th Cir. 2015) (quoting *Oxford*, 569 U.S. at 568).

Defendants argue that they had a "right" to a three-person arbitration panel for claims over one million dollars under the AAA Rules, and accordingly, the Arbitrator acting alone did not have the authority to award damages in excess of one million dollars.  ECF No. [17] at 18 ("PCI was not afforded its right to a three-person tribunal"), 19 (noting PCI was "deprived PCI of its right to demand a three-person panel").  In making this argument, Defendants selectively quote the AAA Rules in attempt to lead this Court to believe that any claim above one million dollars must be heard by three arbitrators.  *Id.* at 18–19 (representing that: "The AAA Rules require a three-person arbitration panel in disputes where a party's claims exceed $1 million" and quoting the AAA Rule L-2 ("[I]f the parties . . . claim . . . involves at least $1,000,000, then three arbitrator(s) shall hear and determine the case" (modifications by Defendants)).  However, AAA Rule L-2 states, in full, as follows:

> Large, complex commercial cases shall be heard and determined **by either one or three arbitrators, as may be agreed upon by the parties.** With the exception in paragraph (b) below, if the parties are unable to agree upon the number of arbitrators and a claim or counterclaim involves at least $1,000,000, then three arbitrator(s) shall hear and determine the case. If the parties are unable to agree on the number of arbitrators and each claim and counterclaim is less than $1,000,000, then one arbitrator shall hear and determine the case.

*Id.* (emphasis added). The plain language of the AAA Rules[5] contains no requirement for three arbitrators to hear a matter where the amount in controversy exceeds one million dollars. Rather, *should the parties not agree on the number of arbitrators*, three arbitrators will be appointed for claims above one million dollars.[6] Counsel for Defendants readily concedes that the parties agreed to have this matter heard by one arbitrator; in fact, counsel notes that he recommended as much to his client. ECF No. [17-1], Molnar Decl. ¶ 11 ("I would have never recommended submitting such credibility determination to a single arbitrator if I had understood PCI Consultants' exposure to be over a million dollars")[7]; *see also* July 27, 2016 Letter from AAA, ECF No. [22-18]. Accordingly, the portion of Rule L-2 cited by Defendants governing situations where the number of arbitrators is contested is inapplicable.

While Defendants argue that they would never have agreed to a single arbitrator if they had known that the amount in controversy could have exceeded one million dollars, this argument is likewise without merit. Solar's original demand for arbitration stated that its claim was for $500,000–$1,000,000, plus punitive damages. ECF No. [22-1] at 3; [23-2] at 2. Based

---

[5] The parties agreed to be bound by the AAA Rules in the arbitration clause of their contract: "Any controversy or claim arising out of or related to this Agreement or the breach thereof shall be settled by binding arbitration in accordance with the then current Rules of the American Arbitration Association and a judgment upon the award rendered by the Arbitrator(s) may be entered in any court [that has] jurisdiction thereof." ECF No. [22-6].

[6] Defendants cite to authority from the Ninth and Tenth Circuits in support of their argument that the Arbitrator was appointed in contravention to the parties' agreement. ECF No. [17] at 20. While these cases do hold that an arbitration must be held in accordance with the agreement of the parties, here, consistent with the parties' contract and the AAA Rules, the parties agreed on a single arbitrator to preside over the arbitration.

[7] Defendant Paparella's declaration further supports that Defendants agreed to a single arbitrator. ECF No. [17-2], Paparella Decl. ¶ 8 ("I would have not allowed that credibility determination to be made by a single person if I had known that PCI Consultants could be subjected to a $1.27 million liability, exclusive of costs and interest, based upon a single arbitrator's decision on whether to believe Smith over me. Perhaps I would have settled. Perhaps I would have sought a stipulation to forego arbitration and seek trial. Perhaps I would have sought a three-arbitrator panel.").

on the damages specified in the demand, Defendants were on notice that, should Solar prevail, the award could exceed one million dollars. Accordingly, while Paparella and Defendants' counsel represented that they did not understand their exposure could exceed one million dollars at the time of arbitrator selection, the Court finds this assertion to be inconsistent with the record. ECF Nos. [17-1] ¶ 11; [17-2] ¶ 8.

Defendants also move to vacate the award of attorneys' fees under the theory that the Arbitrator exceeded his authority because he lacked jurisdiction. Defendants argue that the July Award, which included an unspecified amount of attorneys' fees, was a "final award" depriving the Arbitrator of jurisdiction to issue the October Award. ECF No. [17] at 24.[8] In Defendants' Supplemental Motion to Vacate, they further argue that because the AAA administratively closed the matter after the Arbitrator issued the July Award, the "AAA's November 1st email impeaches the Arbitrator's October 10th ruling and supports the conclusion that the Arbitrator may have misstated certain facts in order to achieve his desired outcome." ECF No. [29] at 5. This argument is equally specious.

In the July Award, the Arbitrator granted Solar attorneys' fees in an amount to be subsequently briefed per the parties' pre-hearing stipulation. *See* ECF No. [20-1]. Defendants appear to argue that under the parties' stipulation, the parties were required to move for prevailing parties attorneys' fees after the hearing but before the Arbitrator determined the prevailing party. However, the Arbitrator determined that Solar's motion for attorneys' fees was

---

[8] Defendants style the July 20, 2017 award as a "Final Award" in their Motions to Vacate and even state in their Supplemental Motion to Vacate that the July 20, 2017 award was termed a "Final Award." ECF No. [24] at 2 ("On July 20, 2017, the Arbitrator issued an Arbitration Award entitled 'Final Award.' "). This representation is false. The July 20, 2017 award is simply entitled "Award," and only the October 10, 2017 and November 1, 2017 award are entitled "Final Award" and "Corrected Final Award," respectively.

timely filed pursuant to the parties' stipulation, and the Court will not disturb that ruling. *Wiand v. Schneiderman*, 778 F.3d 917, 926 (11th Cir. 2015); *Aviles v. Charles Schwab & Co.*, 435 F. App'x 824, 829 n. 7 (11th Cir. 2011) (per curiam). Moreover, Defendants' argument is belied by the fact that Defendant Paparella filed his own Motion for Attorneys' Fees *after* the July Award on August 24, 2017. *See* ECF No. [22-5]; *see also* [20-2] at 1. As summarized by the Arbitrator: "The Award entered by me on July 20, 2017 was not intended to be a final award. The determination of prevailing party fees and costs was expressly agreed to be addressed post final hearing, by stipulation of the parties." ECF No. [20-2] at 2. The Court has considered Defendants' remaining arguments in support of the Motions to Vacate based on the arbitrator exceeding his authority and finds them without merit. Accordingly, Arbitrator had the authority to enter both the July Award and the October Final Award.

## C. BIAS

Under Section 10(a)(2), " 'an arbitration award may be vacated due to the 'evident partiality' of an arbitrator only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists.' " *World Bus. Paradise, Inc. v. Suntrust Bank*, 403 F. App'x 468, 470 (11th Cir. 2010) (quoting *Univ. Commons–Urbana, Ltd. v. Universal Constructors, Inc.*, 304 F.3d 1331, 1339 (11th Cir. 2002)). If an actual conflict does not exist, the movant must show that the partiality is "direct, definite and capable of demonstration rather than remote, uncertain and speculative." *Univ. Commons*, 304 F.3d at 1339 (internal citations and quotations omitted.) "The burden of proving facts which would establish a reasonable impression of partiality rests squarely on the party challenging the award." *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1201 (11th Cir. 1982).

Defendants argue that the Arbitrator demonstrated "irrefutable" and "unmistakable" bias in the October Final Award. ECF No. [17] at 21. In essence, Defendants argue that the Arbitrator's rulings on their attorneys' fees motion were biased. ECF No. [17] at 21-22.[9] In the July Award, the Arbitrator awarded Solar "reasonable attorneys' fees and costs" and both Solar and Defendant Paparella subsequently sought attorneys' fees under the July Award. ECF No. [20-1]. The Arbitrator awarded prevailing party attorneys' fees to Solar, and denied Defendant Paparella's motion for attorneys' fees. ECF No. [20-2].

Defendants improperly attempt to convert these adverse rulings on attorneys' fees into a showing of bias. *World Bus. Paradise*, 403 F. App'x at 470 ("Appellants have provided no evidence to support their claims of partiality and misconduct. They point to only the arbitration award itself as evidence, but the award on its face does not reveal any actual or potential conflict of interest or impropriety."). Defendants neither argue nor has this Court found any instance of an actual or potential conflict, or direct and definite partiality capable of demonstration as required under the FAA. ECF No. [17] at 21. Accordingly, the Motion to Vacate based on Arbitrator bias is denied.

### D. EVIDENTIARY RULINGS

"Arbitrators enjoy wide latitude in conducting an arbitration hearing, and they are not constrained by formal rules of procedure or evidence." *Rosensweig v. Morgan Stanley & Co.*, 494 F.3d 1328, 1333 (11th Cir. 2007) (citation and quotation marks omitted). An arbitrator is not required to accept all the evidence a party seeks to introduce in an arbitration proceeding so long

---

[9] Defendants moved for the Arbitrator to be removed during the hearing due to bias. ECF Nos. [22-8], [22-13]. The motion was fully briefed after the hearing and the AAA determined that there was no evidence of bias and that the Arbitrator should not be removed. ECF No. [22-14]. Defendants appear to limit their arguments regarding bias in the Motions to Vacate to rulings after the hearing. *See* ECF No. [17] at 21–22.

as the parties receive a fundamentally fair hearing. *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1017 (11th Cir. 1998), *overruled on other grounds by Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008). Thus, when a party challenges an evidentiary decision of the arbitration panel, a federal court may vacate the award only if the arbitrator's refusal to hear pertinent and material evidence prejudiced the rights of the parties to the arbitration proceedings. *Rosensweig*, 494 F.3d at 1333.

Here, Defendants argue that had they understood Solar planned to seek the contract price of $5.25 in damages, they would have elicited certain additional testimony demonstrating that (1) SACE had paid $3.00 per petition for the value of educating the public and that those services had been fully performed; (2) Solar and SACE's division of the $5.25 price per signature was an attempt to avoid tax and election regulations; (3) the petitions in question could have been used for the 2018 election. ECF No. [17] at 22–23; *see also* Tr. at 280.

The Court has carefully reviewed the transcripts from the hearing and notes that for each of the areas of inquiry, the Arbitrator either allowed some limited evidence (*see, e.g.*, Tr. at 164–65 (Paparella testifying that PCI never performed any citizen education under the SACE contract)) or precluded introduction of that evidence based on an evidentiary ruling stated on the record (*see, e.g.*, Tr. at 65 (sustaining objection after weighing probative value versus prejudice); 280 (sustaining objection based on relevance)). The Arbitrator had a reasonable basis to limit the evidence introduced at the hearing to the 2016 ballot initiative and the contracts and parties before the Arbitrator, and to exclude evidence related to SACE's tax reporting requirements as more prejudicial than probative. *Rosensweig*, 494 F.3d at 1334 (finding "the arbitrators committed no misconduct because they had several reasonable bases for limiting evidence . . ."). Defendants admit that vacatur is only appropriate based on an evidentiary ruling that so affects

20

the rights of the party that they were deprived of a fair hearing. *See* ECF No. [17] at 23 (citing *Int'l Union, Mine Workers v. Marrowbone Dev. Co.*, 232 F.3d 383, 389 (4th Cir. 2000). Defendants' complained of evidentiary rulings do not meet that standard.

## IV.    MOTION TO CONFIRM

The FAA "imposes a heavy presumption in favor of confirming arbitration awards; therefore, a court's confirmation of an arbitration award is usually routine or summary." *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 842 (11th Cir. 2011) (internal quotation marks and citations omitted).  Under Section 9 of FAA:

> [i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9.  The provision for judicial confirmation carries "no hint of flexibility" because "[o]n application for an order confirming the arbitration award, the court must grant the order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1322 (11th Cir. 2010) (quoting *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 587 (2008) (internal quotation marks omitted). Solar has moved to confirm the arbitration award. ECF No. [20].

The Court has found that none of the exclusive statutory grounds to vacate an arbitration award apply. *See supra.*  Moreover, none of Defendants' additional arguments in opposition to confirmation, including mootness, contract interpretation, and procedural deficiencies, preclude confirmation.  ECF No. [25].  Accordingly, under 9 U.S.C. § 9, the Court must grant the Motion to Confirm.

## V.     CONCLUSION

For the reasons stated above, Defendants have failed to meet the heavy burden on their Motions to Vacate and the Court must grant the Motion to Confirm the Award.  The Court has considered the parties remaining arguments and finds them without merit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants PCI Consultants, Inc. and Angelo Paparella's Motion to Vacate Arbitral Award, **ECF No. [17]**, is **DENIED.**

2. Solar's Motion to Confirm Arbitration Award, with Supporting Memorandum of Law**, ECF No. [20]**, is **GRANTED**.

3. Defendant PCI's Supplemental Memorandum in Support of the Motion to Vacate, **ECF No. [29],** is **DENIED.**

4. The Clerk of Court shall **ADMINISTRATIVELY CLOSE** this case.

5. To the extent not otherwise disposed of by this Order, any scheduled hearings are **CANCELLED**, all pending motions are **DENIED** as moot, and all deadlines are **TERMINATED.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 8th day of June, 2018.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record