UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CV-62688-SMITH/VALLE

FLORIDIANS FOR SOLAR
CHOICE, INC.,  a Florida not for
profit corporation, and SOUTHERN
ALLIANCE FOR CLEAN ENERGY,
INC., a Tennessee Corporation,

      Plaintiff/Judgment Creditors,

v.

PCI CONSULTANTS, INC., a California corp.,

      Defendant/Judgment Debtor,

and

ANGELO PAPARELLA, individually,
AAP HOLDING COMPANY, INC., a Delaware
corporation, BH-AP PETITIONING PARTNERS,
LLC, a Delaware limited liability company, DANA
GONZALEZ-APLIN, as Trustee of the BNVFBVN
Trust, CARMEN G. PAPARELLA, individually, and
VMAMNTOP, LLC, a California limited liability
company,

      Defendants.
_____

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

      THIS MATTER is before the Court upon Defendant PCI Consultants, Inc.'s Motion to

Transfer Venue (ECF No. 177) and Defendants' Motion to Dismiss the Second Amended

Supplemental Complaint (ECF No. 188) (the "Motion to Dismiss") (and, together with the Motion

to Transfer Venue, the "Motions").  United States District Judge Rodney Smith has referred this

action to the undersigned for appropriate disposition of all post-judgment matters.  (ECF No. 194).

Accordingly, having reviewed the Second Amended Supplemental Complaint and Amendment by

Interlineation to Second Amended Supplemental Complaint (ECF Nos. 183, 191), the Motions, Plaintiffs' Responses (ECF Nos. 193, 200), and Defendants' Replies (ECF Nos. 202, 206), and being otherwise duly advised in the matter, the undersigned respectfully recommends that: (i) the Motion to Transfer Venue be **DENIED** and (ii) the Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART** for the reasons set forth below.

## I.       BACKGROUND AND PROCEDURAL HISTORY

These proceedings stem from an unsatisfied judgment for more than $2 million affirming an arbitration award in favor of Floridians for Solar Choice, Inc. ("FSC") and Southern Alliance for Clean Energy ("SACE") (together, "Plaintiffs" or the "Solar Parties"), and against PCI Consultants, Inc.  ("PCI" or the "Judgment Debtor").[1]  Relevant to the Motions, Plaintiffs commenced proceedings supplementary under Florida Statute § 56.29 and filed a Second Supplemental Amended Complaint against seven Defendants (named below).  *See generally* (ECF No. 183).

Although the underlying litigation in this District commenced in 2015, the post-judgment proceedings began on May 30, 2019, when the District Court granted Plaintiffs' motion to commence proceedings supplementary and directed Defendants to respond to Notices to Appear. *See* (ECF Nos. 86, 95).  Thereafter, Plaintiffs filed a Supplemental Complaint against Defendant and Judgment Debtor PCI, Defendant Angelo Paparella ("Paparella"), and Third-Party Defendants AAP Holding Company, Inc. ("AAP"), BH-AP Petitioning Partners, LLC ("BH-AP"), and Dana Gonzalez-Aplin, Trustee of BNVFBVN Trust ("Gonzalez-Aplin") (collectively, the "Impleaded Defendants").  *See* (ECF No. 118).  On October 2, 2019, Plaintiffs filed an Amended Supplemental Complaint,  adding  Defendants  Carmen  G.  Paparella,  ("Wife"  or  "Mrs. Paparella")  and

---

[1] On April 1, 2020, the Eleventh Circuit affirmed the judgment of the District Court, which had affirmed the arbitration award.  *See* (ECF No. 222).

VMAMNTOP, LLC ("VMAMNTOP") (together with the Impleaded Defendants, "Defendants"). *See* (ECF No. 144).

On December 19, 2019, Plaintiffs filed an eight-count Second Amended Supplemental Complaint, alleging fraudulent transfers pursuant to Fla. Stat. § 56.29 (Counts I-IV), mere continuation liability (Count V), alter ego liability (Count VI), de facto merger (Count VII), and unlawful distributions (Count VIII).   (ECF No. 183) (the "SASC").   The Motion to Dismiss followed.   (ECF No. 188).   Defendants seek dismissal of the SASC on four general grounds: (i) failure to plead subject matter jurisdiction (ECF No. 188 at 6-8); (ii) lack of personal jurisdiction over Defendants (*Id.* at 8-15); (iii) improper venue (*Id.* at 15-18); and (iv) failure to state a claim as to each count of the SASC.[2]  *Id.* at 18-26.

In response, Plaintiffs assert that, by interlineation, they have established complete diversity of citizenship (by alleging the citizenship of each Defendant) and an amount in controversy of more than $75,000.[3]   *See* (ECF Nos. 191, 200 at 2, 5).   Accordingly, the undersigned finds that Defendants' challenge based on subject matter jurisdiction (and the related arguments regarding pendent/supplemental jurisdiction) is moot.[4]  *See*  (ECF No. 200 at 5-10) and

---

[2] A defendant may join objections to jurisdiction under Rule 12(b)(2) with a motion to dismiss for failure to state a claim or any other defenses that are assertible by motion without waiving the jurisdictional defense.  *Madara v. Hall*, 916 F.2d 1510, 1514, n.1 (11th Cir. 1990).  As a general rule, when the court faces a motion raising a combination of Rule 12(b) defenses, it will rule on the jurisdictional issues before considering whether a claim was stated in the complaint.  *Id.*

[3] Specifically, by interlineation, Plaintiffs allege that FSC is a citizen of Florida and SACE is a citizen of Tennessee.  *See* (ECF No. 191 ¶¶ 3-4.  Defendants citizenship, on the other hand, is as follows: (i) PCI is a citizen of California; (ii) AAP is a citizen of Delaware and California; (iii)  BH-AP is a citizen of California, through its sole member Paparella; and (iv) VMAMNTOP is also citizen of California, through its members Paparella and Mrs. Paparella.  *See* (ECF No. 191 ¶¶ 5, 7, 8, 11).  Moreover, Plaintiffs have obtained an unsatisfied judgment for more than $2 million against PCI.  (ECF No. 183 ¶ 5).

[4] Because the parties use various terms in their jurisdictional analysis, the Court notes that "[t]oday, the terms 'ancillary,' 'pendent,' and 'supplemental' are all used, essentially interchangeably" and contrast with "independent" basis for federal subject matter jurisdiction, like diversity of

(ECF No. 223 at 42:5-11) (Transcript of 3/6/2020 Hearing on the Motions) (Defendants' counsel concedes that the arguments regarding ancillary jurisdiction are moot).  Nevertheless, Defendants' challenges to personal jurisdiction, venue, and the merits of Plaintiffs' claims remain in dispute.

In response to Defendants' challenge to personal jurisdiction, Plaintiffs argue that the SASC establishes "alter ego jurisdiction" in that all Defendants acted as the alter ego of PCI, the Judgment Debtor.  (ECF No. 200 at 2, 14).  Plaintiffs argue that the two corporate Defendants (AAP and BH-AP) have performed approximately $11 million in petition gathering in Florida.  *Id.* at 2.  Plaintiffs also argue that two other Defendants (BNVFBVN and Mrs. Paparella) own property in Florida. *Id*. at 2, 14.  As to VMAMNTOP, Plaintiffs assert that it "is the alter ego of Paparella for the purposes of taking and holding title to property which he controls and which he would otherwise be required to disgorge to satisfy the judgment." *Id*. at 14. Based on these allegations, Plaintiffs argue that this Court has personal jurisdiction over all Defendants.  *Id.*  at 2, 14.

Plaintiffs further insist that venue lies exclusively in the Southern District of Florida based on Florida's proceedings supplementary statute § 56.29, which requires that the action be filed in this District.  (ECF No. 200 at 3).  Lastly, in response to Defendants' argument that the SASC fails to state a claim, Plaintiffs argue that they have alleged the necessary elements and facts supporting each claim.  *Id.*

## II.   <u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>

### A.     **General Standard**

A federal court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties

---

citizenship.  § 3523 Terminology and Historical Development, 13 Fed. Prac. & Proc. Juris. § 3523 (3d ed.).

(personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007); *see also Steel Co. v. Citizens for A Better Env't*, 523 U.S. 83, 93-102 (1998). Having determined that the Court has subject matter jurisdiction based on diversity of citizenship, the undersigned must next consider whether the Court has personal jurisdiction over Defendants.

Ordinarily, federal courts follow state law in determining the bounds of their jurisdiction over persons. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *see* Fed. R. Civ. P. 4(k)(1)(A) (service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"). "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015) (citation omitted); *see also Broward Marine, Inc. v. S/V Zeus*, No. 05-23105-CIV, 2010 WL 427496, at *4 (S.D. Fla. Feb. 1, 2010) (citing *Sculptchair v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). Both prongs must be satisfied for personal jurisdiction to exist. *Madara*, 916 F.2d at 1514; *see also Broward Marine*, 2010 WL 427496, at *4. Thus, a federal district court in Florida "may exercise personal jurisdiction over a nonresident defendant, to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) (citation omitted).

A court must determine that it has personal jurisdiction over a defendant even in proceedings supplementary, which are considered "a continuation of the initial underlying proceeding and venue in the case does not shift from jurisdiction to jurisdiction . . . but remains with the court which entered the judgment." *State, Dep't of Ins. v. Accelerated Benefits Corp.*, 817 So. 2d 1086, 1088 (Fla. 4th DCA 2002) (citation and quotation omitted). Indeed, § 56.29 does

5

not alleviate the requirement that a trial court have jurisdiction over an impleaded party.  *Deluca v. King*, 197 So. 3d 74, 76-77 (Fla. 2d DCA 2016); *see also Jarboe Family & Friends Irrevocable Living Trust v. Spielman*, 136 So. 3d 666, 670 (Fla. 2d DCA 2014) (holding that a trial court must have personal jurisdiction over an impleaded defendant under *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499 (Fla.1989), and the long-arm statute).

### B.     Florida's Long-Arm Statute and Prima Facie Case

The reach of Florida's long-arm statute is a question of Florida law.  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013)  (citation and quotation omitted); *Madara*, 916 F.2d at 1514.  Federal courts are therefore "required to apply the statute as would the Florida Supreme Court," and are "bound to adhere to the interpretations of Florida's long-arm statute offered by Florida's District Courts of Appeal absent some indication that the Florida Supreme Court would hold otherwise."  *Louis Vuitton Malletier*, 736 F.3d at 1352 (citation omitted).  Moreover, Florida's long-arm statute is to be strictly construed.  *Id.*; *see Spielman*, 136 So. 3d at 669 (remanding case for determination of whether a Florida court may exercise in personam jurisdiction over a nonresident third-party defendant through impleader absent a basis for personal jurisdiction under Florida's long-arm statute).

A defendant can be subject to personal jurisdiction under Florida's long-arm statute in two ways.  First, Florida courts may exercise general jurisdiction, even if the claims against the defendant do not involve its activities in Florida, if the defendant "is engaged in substantial and not isolated activity within [Florida]."  Fla. Stat. § 48.193(2).  Second, Florida courts may exercise specific jurisdiction when a defendant engages in certain activity within Florida.  *Id.* § 48.193(1)(a); *see also Madara*, 916 F.2d at 1516 n.7 ("Specific personal jurisdiction is founded on a party's contacts with the forum state that are related to the cause of action.  General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation.").

6

A plaintiff seeking to establish personal jurisdiction over a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). A prima facie case requires enough evidence to withstand a motion for judgment as a matter of law. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). If the defendant challenges personal jurisdiction "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction."[5] *Louis Vuitton Malletier*, 736 F.3d at 1350 (citation omitted); *see also Broward Marine*, 2010 WL 427496, at \*4. If the plaintiff's allegations and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of plaintiff. *Meier*, 288 F.3d at 1269; *see also Broward Marine*, 2010 WL 427496, at \*5. Thereafter, if such inferences are sufficient to defeat a motion for judgment as a matter of law, "the court must rule for the plaintiff, finding that jurisdiction exists." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010).

### 1. *General Jurisdiction Standard*

The reach of Florida's general jurisdiction provision "extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Carmouche*, 789 F.3d at 1204 (citation omitted); *see Rautenberg v. Falz*, 193 So. 3d 924, 931 (Fla. 2d DCA 2016) (noting that proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way). A court's assertion of general jurisdiction over a foreign (sister-state or foreign-country) corporation comports with due process when the corporation's affiliations with the State are so "'continuous

---

[5] The burden does not shift, however, if the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction. *Louis Vuitton Malletier*, 736 F.3d at 1350 (citation and quotation omitted).

and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Only a limited set of affiliations with a forum will render a defendant amenable to its general jurisdiction.  *Daimler*, 571 U.S. at 137; *Goodyear*, 564 U.S. at 924.  "[T]he 'paradigm' forums in which a corporate defendant is 'at home' are the corporation's place of incorporation and its principal place of business."  *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017); *see Daimler*, 571 U.S. at 137; *Goodyear*, 564 U.S. at 924. In an "exceptional case," however, a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19.  General personal jurisdiction is based on a defendant's substantial activity in Florida without regard to where the cause of action arose.  *Louis Vuitton Malletier,* 736 F.3d at 1352 (citation omitted).  A foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business.  *Carmouche*, 789 F.3d at 1205.

In relevant part, under Florida's long-arm statute, a defendant who is engaged in substantial and not isolated activity within the state, is subject to general jurisdiction in Florida courts, whether or not the claim arises from that activity.  Fla. Stat. § 48.193(2).

### 2.  *General Jurisdiction as to Defendants*

As to Defendants Paparella, AAP, and BH-AP, Plaintiffs specifically allege that: (i) "this Court has jurisdiction pursuant to Fla. Stat. § 48.193 due to the substantial contacts and business being performed in Florida by Paparella and his alter ego Defendants, PCI, AAP, and BH-AP . . . ." (SASC ¶ 2); and (ii) Paparella "conducts petition gathering business activities which are substantial and not isolated in the State of Florida through PCI, AAP, and BH-AP; and sui juris, Paparella owns property in the state of Florida" (*Id.* ¶ 6).  Plaintiffs also allege (and attach

documentary evidence) that Paparella transferred certain real property for no consideration, including Unit 301 at Eagle Cay Condominium in Naples, Florida (the "Florida Property").  *See* SASC ¶ 26(f); *see also* (SASC ¶ 26(a), (c), (d) (concerning Canwood, Tuna Canyon, and Holiday properties in California));  (SASC Exs. 5, 7, 8).

Plaintiffs further allege that AAP and BH-AP have performed millions of dollars in petition gathering in Florida.  (SASC ¶¶ 7-8); *see also* (SASC Exs. 2-3).  Specifically, Plaintiffs allege that: (i) Paparella conducts "petition gathering business activities which are substantial and not isolated in the State of Florida through PCI, AAP and BH-AP . . . ." (SASC ¶ 6); (ii) "AAP has performed . . . over $400,000.00 [in petition gathering] in Florida" (*Id*. ¶ 7); and (iii) "BH-AP has performed millions of dollars in petition gathering in Florida." (*Id*. ¶ 8).  Plaintiffs further allege that: (i) Paparella is the owner of PCI, AAP and BH-AP (*Id*. ¶ 118); and (ii) Paparella controlled and dominated PCI, AAP, and BH-AP in order to keep the substantial profits generated by his businesses rather than pay them to the Judgment Creditors (*Id*. ¶ 121).

In response to the allegations in the SASC and in support of their Motion to Dismiss, Defendants submitted the Declaration of Paparella asserting, in relevant part, that Paparella, AAP, and BH-AP: (i) are not licensed or registered to do business in Florida; (ii) have never owned an office of physical presence in Florida; (iii) do not have a registered agent for service of process in Florida; (iv) do not have a bank account in Florida; and (v) have never advertised in Florida.  *See* (ECF No. 188-1 at ¶¶ 3, 9, 12).  Paparella also declares that he has respected the corporate form as to each of the entities and "never intentionally used [PCI or AAP or BH-AP] as a mere device or sham to accomplish an ulterior purpose."  (*Id*. ¶¶ 7, 10, 13).  Paparella further explains that PCI (the Judgment Debtor) never had an interest in the various properties that are the subject of the alleged transfers.  (*Id*. ¶¶ 15-18).

Although Plaintiffs' allegations demonstrate that Paparella, AAP, and BH-AP may have engaged in "substantial and not isolated activity within the state" through their petition gathering activities in Florida generating millions of dollars in revenue, the undersigned finds that these allegations are insufficient to satisfy the stringent due process requirements necessary to establish general jurisdiction. *Daimler*, 571 U.S. at 138 (noting that to approve the exercise of general jurisdiction in every state in which a corporation "engages in a substantial, continuous, and systematic course of business" is "unacceptably grasping"); *see also Fincantieri-Cantieri Navali Italiani S.p.A. v. Yuzwa*, 241 So. 3d 938, 945 (Fla. 3d DCA 2018) (holding defendant was not subject to general jurisdiction because its contacts, although substantial and not isolated, were insufficient to render defendant at home in state); *Schulman v. Inst. for Shipboard Educ.*, 624 F. App'x 1002, 1005 (11th Cir. 2015) (finding that defendant's Florida connections involving distribution agreements with dealers, marketing efforts, and attendance at a trade show were insufficient to establish general personal jurisdiction); *Fraser*, 594 F.3d at 845-47 (holding that Florida courts could not exercise general personal jurisdiction over foreign company even though the company engaged in marketing activities in Florida, procured liability insurance through a Florida insurance agent, purchased half of its boats in Florida, and sent employees and representatives to Florida for training). Against this legal backdrop, the undersigned concludes that Plaintiffs have failed to sufficiently allege general jurisdiction under Florida's long-arm statute against Defendants Paparella, AAP, and BH-AP.

Similarly, the allegations against Defendants Gonzalez-Aplin, Mrs. Paparella, and VMAMNTOP, which stem from even more limited contacts based on the alleged transfer of the Florida Property and other assets, also fail. (SASC ¶¶ 9, 10, 12). These alleged contacts are nowhere near the "substantial and not isolated" activity necessary to satisfy the requirements for

general personal jurisdiction in Florida courts.  Accordingly, general jurisdiction is also lacking as to these Defendants.

The Court next considers whether Defendants are subject to specific personal jurisdiction.

*3.   Specific Jurisdiction*

Under Florida's long-arm statute, a person, whether or not a citizen or resident of Florida, who personally or through an agent: (i) operates, conducts, engages in, or carries on a business or business venture in the state; or (ii) owns, uses, possesses, or holds any real property within the state, submits to the jurisdiction of Florida courts for any cause of action arising from those acts. Fla. Stat. § 48.193(1)(a)(1), (3).

*a.   Business Within the State (Defendants Paparella, AAP, and BH-AP)*

As noted above, Plaintiffs allege that: (i) "this Court has alter ego jurisdiction over all Defendants as they have all acted as alter egos as to one or more assets of Paparella as transferee to operate and hold the assets to prevent collection of the judgment" (SASC ¶ 2); and (ii) "this Court has jurisdiction pursuant to Fla. Stat. §48.193 due to the substantial contacts and business being performed in Florida by Paparella and his alter ego Defendants, PCI, AAP, and BH-AP . . . ." (*Id*. ¶ 2).  Plaintiffs also allege (and attach documentary evidence) that Paparella transferred certain real property for no consideration, including a Florida property.  *See* (*Id*. ¶ 26(f)); *see also* (*Id*. ¶ 26(a), (c), (d) (concerning Canwood, Tuna Canyon, and Holiday properties)); (SASC Exs. 5, 7, 8).  Plaintiffs further allege that AAP and BH-AP  have performed millions of dollars in petition gathering in Florida.  (*Id*. ¶¶ 7-8); *see also* (*Id*. Exs. 2-3).

In support of their Motion to Dismiss, Defendants submitted the Declaration of Defendant Paparella asserting, in relevant part, that Paparella, AAP, and BH-AP: (i) are not licensed or registered to do business in Florida; (ii) have never owned an office of physical presence in Florida; (iii) do not have a registered agent for service of process in Florida; (iv) do not have a bank account

in Florida; and (v) have never advertised in Florida.  *See* (ECF No. 188-1 at ¶¶ 3, 9, 12).  Paparella also declares that he has respected the corporate form as to each of the entities and "never intentionally used [PCI or AAP or BH-AP] as a mere device or sham to accomplish an ulterior purpose."  (*Id*. ¶¶ 7, 10, 13).  Paparella further explains that PCI (the Judgment Debtor) never had an interest in the various properties that were the subject of transfers in Florida and California.  (*Id*. ¶¶ 5, 15-18).

A review of the SASC reveals that Plaintiffs' causes of action for fraudulent transfers, mere continuation, and alter ego liability arise from Defendants' petition gathering business in Florida. For example, taking the allegations in the SASC as true, the SASC and its exhibits allege that after Judgment Debtor PCI ceased operations, AAP and BH-AP began operating the same business, using many of the same employees, vendors, officers and owners of PCI at the same location, and with many of the same trade tools, equipment, intellectual property and the like.  (SASC ¶¶ 108, 111).  Plaintiffs further allege that AAP and BH-AP have generated millions of dollars in revenue in Florida alone and are "mere continuations" of the Judgment Debtor PCI.  (*Id*. ¶¶ 109, 112, 114). Paparella does not deny that the corporate entities generate millions of dollars in petition gathering in Florida.   In fact, Paparella admits that, although the corporate defendants did not employ individuals in Florida, PCI, AAP, and BH-AP hired subcontractors in Florida who collected signatures that were then transmitted and processed in California.  (ECF No. 188-1 ¶¶ 5, 9, 12).

Based on these allegations in the SASC and at this stage of the proceedings, Paparella's conclusory Declaration is insufficient to deprive the Court of specific jurisdiction over Defendants Paparella, AAP, and BH-AP under Florida's long arm statute.  *See, e.g.*, *Louis Vuitton Malletier*, 736 F.3d at 1350 (the burden of proof does not shift if the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction); *see also  Damian v. Yellow Brick Capital Advisers (UK) Ltd.*, No. 19-21538-CIV, 2019 WL 5887360, at *15 (S.D. Fla. Nov.

12, 2019) (concluding that court had jurisdiction over defendants based on alter ego allegations). Accordingly, the undersigned finds that the SASC sufficiently alleges specific jurisdiction over Defendants Paparella, AAP, and BH-AP under Florida's long-arm statute in that these Defendants allegedly operated, conducted, engaged in, or carried on petition gathering business in the state, which gave rise to Plaintiffs' claims in the SASC. *See* Fla. Stat. §48.193(1)(a)(1).

      b.    *Transfers of Real Property (Defendants Gonzalez-Aplin, Mrs. Paparella, and VMAMNTOP)*

The allegations against Defendants Gonzalez-Aplin, Mrs. Paparella, and VMAMNTOP are based on the alleged transfer of property and assets made by Paparella to these Defendants with the alleged intent to hinder and delay the Judgment Creditors' collection efforts, and/or defraud Judgment Creditors. *See, e.g.*, (SASC ¶¶ 33-34) (alleging transfer of property and assets owned by PCI and transferred to Paparella, Mrs. Paparella, AAP, BH-AP, Gonzalez-Aplin and/or the VMAMNTOP); (*Id.* ¶ 77) (alleging a fraudulent transfer of the Florida Property from Paparella to Gonzalez-Aplin as trustee of BNVFBVN Trust); (*Id.* ¶¶ 92-100) (alleging count for fraudulent transfer against Defendants Mrs. Paparella, Gonzalez-Aplin, and VMAMNTOP).

      *(i) Defendant Gonzalez-Aplin*

Plaintiffs allege (and attach documentary evidence to the SASC), that on May 9, 2018, Paparella executed a warranty deed to Gonzalez-Aplin (for nominal consideration) to avoid the Court taking jurisdiction of Paparella's assets to satisfy the judgment in this action. (SASC ¶ 9); *see also* (SASC Ex. 4). Plaintiffs conclude that Gonzalez-Aplin, as Trustee, therefore "received a fraudulent transfer of the real property owned by Paparella, and is now with any beneficiaries thereof, not simply a recipient of a fraudulent transfer, but the alter ego of Paparella for the purpose of ownership and control of the property, in which Solar Parties believe equitable title has now been transferred to or vested in Paparella and Mrs. Paparella and possibly others." (SASC ¶ 9). Thus, Plaintiffs argue that Florida's long-arm jurisdiction extends to Defendant Gonzalez-Aplin,

as trustee of the BNVFBVN Trust, which now owns real property in Florida.  (ECF No. 200 at 17).

In response, Defendant Gonzalez-Aplin declares that she is the Trustee of the BNVFBVN Trust, formed in California, which has no connections to Florida except its ownership of the Florida Property.  (ECF No. 188-3 ¶ 4).  According to Defendant Gonzalez-Aplin, she has never conducted business in Florida and has no relevant contacts in the state.  *Id.* ¶¶ 4, 5.

*(ii) Defendant Mrs. Paparella*

Plaintiffs similarly allege that the Court has jurisdiction over Mrs. Paparella under Florida's long-arm statute (§ 48.193) based on ownership of real property within Florida.  (SASC ¶ 2).  Moreover, Plaintiffs allege that Mrs. Paparella is both a transferee and a transferor of real property equitably owned and/or controlled by Paparella in California and, upon information and belief, in Florida.  (*Id*. ¶ 10).  According to the SASC, Mrs. Paparella received or transferred legal or equitable title and/or participated in making fraudulent transfers of interests in real property owned by Paparella.  (*Id*. ¶ 10); *see also* (SASC Exs. 1, 4, 5, 6, 7, 8, 9, 10, and 11).  Plaintiffs allege, therefore, that Mrs. Paparella "received fraudulent transfers of real property owned by Paparella, and is now (along with any other beneficiaries of any trusts or owners of entities), not simply a recipient of a fraudulent transfer, but the alter ego of Paparella for the purpose of ownership and control of the property(ies), in which Solar Parties believe equitable title has now been transferred to or vested in Paparella and Mrs. Paparella and possibly others."  (SASC ¶ 10).  The specific transfers involve three properties in California (the Canwood, Holiday, and Tuna Canyon properties) (as defined in the SASC) and the Florida Property.  SASC ¶ 26.  Further, in response to the Motion to Dismiss, Plaintiffs assert Paparella and Mrs. Paparella hold equitable title to the Florida Property while Defendant Gonzalez-Aplin holds legal title.  (ECF No. 200 at 15).

In response, Mrs. Paparella declares that she is a resident of California, with no business ventures or any connections to the corporate defendants or to Florida. *See* (ECF No. 188-2 ¶¶ 3-5). Although Mrs. Paparella does not address Paparella's alleged ownership and subsequent transfer of the Florida Property, Paparella declares that he purchased the Florida Property from his parents, who were "underwater on their mortgage and were struggling financially." (ECF No. 188-1 ¶ 15). According to Paparella, the purchase was "[t]o ensure that [Paparella's] parents could maintain their quality of life" and the property was "exclusively used by his aging parents." *Id*. Paparella then transferred the Florida Property to the BNVFBVN Trust, for which Gonzalez-Aplin is trustee. *Id*.

Ownership of property, without more, is insufficient to subject a nonresident defendant to the jurisdiction of Florida, unless the cause of action arose out of such ownership. *Nichols v. Paulucci*, 652 So. 2d 389, 393 n.5 (Fla. 5th DCA 1995). Here, Plaintiffs do not allege that the claims against Mrs. Paparella and Gonzalez-Aplin arise from the Florida Property or that the Florida Property forms the basis of the action. Thus, the undersigned finds that Plaintiffs have failed to allege specific jurisdiction under Florida's long-arm statute against Mrs. Paparella or Gonzalez-Aplin (as trustee of BNVFBVN Trust) based on the ownership of real property in Florida. Accordingly, the Motion to Dismiss should be granted as to these Defendants.[6]

(iii) *Defendant VMAMNTOP*

Plaintiffs allege that VMAMNTOP was created by Paparella to become "the successor or alter ego owner" of Paparella's assets. (SASC ¶ 11). Plaintiffs further allege that VMAMNTOP was created as a mere instrumentality of Paparella and for the improper purpose of allowing

---

[6] Because the undersigned finds that Plaintiffs have failed to sufficiently allege personal jurisdiction against Mrs. Paparella and Defendant Gonzalez-Aplin under Florida's long-arm statute, the Court need not address the due process considerations for these Defendants nor whether Counts I and III fail to state a claim against these defendants.

Paparella to continue to own and control the property without repaying the profits taken from PCI (and the alter ego companies AAP and BH-AP), by changing legal title to the properties from Paparella directly.  (*Id*. ¶ 12).  For example, Plaintiffs allege that, on May 1, 2018, Mrs. Paparella recorded a deed for no consideration to transfer the Canwood Property to VMAMNTOP.  (*Id*. ¶ 26(b)); *see also* (SASC Exs. 5, 6).  Plaintiffs also allege that VMAMNTOP, and all Defendants, are all alter egos of Paparella.  (SASC ¶ 12).

Here, the undersigned finds that Plaintiffs have failed to sufficiently allege how Florida's long-arm statute (whether general or specific jurisdiction) applies to Defendant VMAMNTOP. Other than conclusory allegations regarding "alter ego" or "mere instrumentality" when generally grouped with all Defendants, VMAMNTOP is charged in Counts I and III for fraudulent transfers. (*Id*. ¶¶ 74-82, 92-100).  The allegation of a fraudulent transfer alone, however, is insufficient to create personal jurisdiction. *See, e.g.*, *Spielman*, 136 So. 3d at 669-70 (remanding case for analysis of personal jurisdiction over non-resident third party impleader defendants).  Accordingly, Plaintiffs have failed to satisfy the requirements of Florida's long-arm statute against Defendant VMAMNTOP and the Motion to Dismiss for lack of personal jurisdiction should be granted as to this Defendant.[7]

### C.  Due Process Considerations for Defendants Paparella, AAP, and BH-AP

Although Plaintiffs have sufficiently alleged specific jurisdiction over Defendants Paparella, AAP, and BH-AP under § 48.193(1) of Florida's long-arm statue, personal jurisdiction cannot be exercised unless a defendant has sufficient "minimum contacts" with the forum state to satisfy the due process requirement that maintenance of the suit not offend notions of fair play and

---

[7] Because the undersigned finds that Plaintiffs have failed to sufficiently allege personal jurisdiction against VMAMNTOP, the Court need not address the more demanding due process considerations for this Defendant nor whether Counts I and III fail to state a claim against VMAMNTOP.  As discussed below, these Counts survive as against other Defendants.

substantial justice. *Tyrell,* 137 S. Ct. at 1558; *see also Jet Charter, Inc. v. Koeck*, 907 F.2d 1110, 1113 (11th Cir. 1990); *Madara*, 916 F.2d at 1514; *Broward Marine*, 2010 WL 427496, at *6. Furthermore, due process requires that defendant's conduct and connection with the forum state be such that the defendant should reasonably anticipate being called into court there. *Jet Charter*, 907 F.2d at 1113. Random, fortuitous or attenuated contacts, or contacts produced through the unilateral activity of a third person, are insufficient to reasonably indicate to the defendant that he should anticipate being subject to personal jurisdiction of the forum state's courts. *Id.*; *Madara*, 916 F.2d at 1514.

In specific personal jurisdiction cases, the due process analysis requires a court to consider whether: (i) the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (ii) the non-resident defendant "purposefully availed" itself of the privilege of conducting activities within the forum; and (iii) the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Louis Vuitton Malletier*, 736 F.3d at 1355. "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (citation omitted).

*1.      Relatedness*

The first prong of the due process analysis "focus[es] on the direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355-56 (citations omitted). Here, there is a direct causal connection between Defendants Paparella, AAP, and BH-AP, their activity in Florida, and the claims in the SASC. For example, Plaintiffs allege that: (i) Paparella conducts "petition gathering business activities which are substantial and not isolated in the State of Florida through PCI, AAP and BH-AP . . . ." (*Id.* ¶ 6); (ii) "AAP has performed . . . over $400,000.00 [in petition gathering] in Florida" (*Id.* ¶ 7); and (iii) "BH-AP has performed millions of dollars in

petition gathering in Florida." (*Id*. ¶ 8). Further, Plaintiffs allege that: (i) Paparella is the owner of PCI, AAP and BH-AP (*Id*. ¶ 118); and (ii) Paparella controlled and dominated PCI, AAP and BH-AP in order to keep the substantial profits generated by his businesses rather than pay them to the Judgment Creditors (*Id*. ¶ 121). Further, Plaintiffs, as judgment creditors with an unsatisfied judgment against Judgment Debtor PCI, allege claims for fraudulent transfers, mere continuation and alter ego liability, and unlawful distribution. *See generally* SASC. These allegations satisfy the first prong of the due process analysis and establish a direct causal relationship between Defendants Paparella, AAP, and BH-AP, the forum (i.e., Florida), and the litigation (i.e., the claims in the SASC).

### 2. *Purposeful Availment*

Under the "minimum contacts test" for purposeful availment, the court must determine whether those contacts: "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privilege of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being hailed into court in the forum." *Louis Vuitton Malletier*, 736 F.3d at 1357. In performing this analysis, the court must "identify all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, those contacts satisfy these criteria." *Id*.

Here, Plaintiffs allege that: (i) AAP (immediately after the Judgment Debtor ceased operations) and BH-AP (beginning in January 2019) began operating the same business, using many of the same employees, vendors, officers and owners of PCI at the same location and with many of the same trade tools, equipment, intellectual property and the like (SASC ¶¶ 111, 125); (ii) in 2018, AAP generated approximately $20,000,000 or more in revenue, performing the same business of PCI (*Id*. ¶¶ 109, 126; SASC Exs. 2, 3, 16 and 17); (iii) at the end of 2018, AAP began declining and ceased performing petition gathering business (SASC ¶ 145); (iv) at the beginning

of 2019 immediately after AAP ceased operations, and without compliance with the statutory requirements for a merger, BH-AP absorbed AAP and began operating the same business, using many of the same employees, vendors, officers and owners of PCI at the same location and with many of the same trade tools, equipment, intellectual property and the like (*Id.* ¶ 146; SASC Exs. 2, 3, 16 and 17); (v) BH-AP generated more than $5,000,000 in revenue in Florida (SASC ¶¶ 112, 147).  Plaintiffs also attach to the SASC reports from the Florida Secretary of State that show millions of dollars in combined payments to AAP and BH-AP.  (SASC Ex. 2).

Defendants do not deny the allegations regarding the amount of petition gathering business that Defendants Paparella, AAP, and BH-AP conduct in Florida.  Rather, through his Declaration, Paparella asserts that he and the corporate defendants all lack connections to Florida and have respected corporate forms at all times.  *See generally* (ECF No. 188-1).  The undersigned, however, is unpersuaded by Paparella's conclusory Declaration and finds that Plaintiffs have sufficiently alleged continuous and systematic contacts in Florida through Defendants' petition gathering business, which spanned several years and provided millions of dollars in revenue.  Defendants' petition gathering business was not fortuitous, attenuated, or produced through the unilateral activity of a third person.  *Jet Charter*, 907 F.2d at 1113; *Madara*, 916 F.2d at 1514.  Thus, the undersigned finds that Defendants Paparella, AAP, and BH-AP purposefully availed themselves of the privilege of doing business in Florida and therefore should have reasonably anticipated being hailed into court in Florida.

### 3.    *Fair Play and Substantial Justice*

In determining whether the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice, courts consider several factors: "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in

obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Louis Vuitton Malletier*, 736 F.3d  at 1358 (citation omitted).

Other than conclusory arguments, Paparella, AAP, and BH-AP have offered no evidence that they would be burdened by having to litigate in Florida.  Indeed, all three Defendants are alleged to conduct millions of dollars in petition gathering business in Florida through multiple PACS and third parties.  *See, e.g.,* (SASC ¶ 52) ("In 2018, AAP performed $418,164.90 in petition gathering for FFW [Floridians for a Fair Wage].  In 2019, BH-AP then performed the petition gathering, collecting $94,895.66 from FFW in January and February 2018 alone); (*Id*. ¶ 55) ("In 2019, [Ban Assault Weapons Now] started paying BH-AP for 'petitioning' and made several payments totaling $236,257.50."); (*Id*. ¶ 56) ("In 2015, AVV [All Voters Vote, Inc.] alone paid PCI $154,282.90 . . . .  In 2019, from March through June 30, 2019, AVV paid BH-AP $5,263,985.40.").  Thus, Florida has  a strong interest in hearing the case and protecting creditors in post-judgment proceedings supplementary.  Further, the Solar Parties have an undeniable interest in having these proceedings adjudicated in Florida, where the judgment was obtained and where Defendants are conducting business.  Lastly, the district court has an interest in this case, which has an extensive and complicated record.  Thus, the undersigned finds that pursuing claims against Defendants Paparella, AAP, and BH-AP  in a Florida court does not offend the due process notions of fair play and substantial justice.

In sum, the undersigned finds that Plaintiffs have sufficiently satisfied the requirements of specific jurisdiction as to Defendants Paparella, AAP, and BH-AP.  Accordingly, the Motion to Dismiss for lack or personal jurisdiction as to these Defendants should be denied.

### D.     Alter Ego Jurisdiction

Alternatively, the undersigned finds that Plaintiffs have sufficiently alleged jurisdiction against Defendants Paparella, AAP, and BH-AP under an alter ego theory.  The alter ego theory

of long-arm jurisdiction exists as a limited exception to the general, two-step process of establishing long-arm jurisdiction. *Broward Marine*, 2010 WL 427496, at *6 (citation omitted). To pierce the corporate veil under Florida law, "a plaintiff is required to prove both that the corporation is a mere instrumentality or alter ego of the defendant and that the defendant engaged in improper conduct in the formation or use of the corporation." *Id.* In Florida, the corporate veil will be pierced only in "exceptional circumstances, such as for fraud or where the corporation is formed for some illegal purpose." *Id.* Improper conduct is present only in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose. *SEB S.A. v. Sunbeam Corp.*, 148 F. App'x 774, 800 (11th Cir. 2005) (citation and quotation omitted).

In relevant part, Plaintiffs allege that: (i) AAP and BH-AP operate under the direction and control of Paparella in substantially the same manner and using substantially the same methods as Paparella had operated PCI before shuttering its operations (SASC ¶ 36); (ii) AAP and BH-AP expressly or impliedly assumed the obligations of PCI, the predecessor company (*Id.* ¶ 37); (iii) the creation of AAP and BH-AP and transfer of business to those entities constituted a de facto merger (*Id.*); (iv) AAP and BH-AP are mere continuations of PCI, the predecessor company (*Id.*); (v) the creation of AAP and BH-AP and transfer of business to them was, and continues to be, a fraudulent effort to avoid the liability of the Judgment Debtor to Solar Parties (*Id*); and (vi) AAP, BH-AP, and/or Paparella are alter egos of PCI and/or each other. *Id.*

Moreover, in Count VI of the SASC, Plaintiffs allege that: (i) AAP and BH-AP were formed for the improper purpose of misleading or defrauding the Judgment Creditors and evading the existing obligations of PCI to pay the Judgment (*Id.* ¶ 119); (ii) AAP and BH-AP were formed by Paparella, who dominates and controls PCI, AAP and BH-AP and all of the business done by those entities (*Id.* ¶ 120); (iii) Paparella controlled and dominated PCI, AAP and BH-AP in order

to keep the substantial profits generated by his businesses rather than pay them to the Judgment Creditors (*Id.* ¶ 121); and (iv) Paparella, AAP and BH-AP are alter egos of each other and of the Judgment Debtor (*Id.* ¶ 133).

Based on these allegations, the early stage of the proceedings, and unpersuaded by Paparella's conclusory Declaration that he has respected the corporate form, the undersigned finds Plaintiffs have sufficiently alleged personal jurisdiction under an alter ego theory. *See also BPI Sports, LLC v. Thermolife Int'l, LLC*, No. 19-60505-CIV-RS (S.D. Fla. Jan. 9, 2020) (ECF No. 37 at 7-8) (denying motion to dismiss where plaintiff alleged a plausible claim for piercing the corporate veil under an alter ego theory). Accordingly, the Motion to Dismiss for lack of personal jurisdiction as to Defendants Paparella, AAP, and BH-AP should also be denied on this alternative basis.

## III.   MOTION TO DISMISS FOR IMPROPER VENUE UNDER RULE 12(b)(3) AND MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404

Defendants seek dismissal of the SASC under Federal Rule of Civil Procedure 12(b)(3) based on improper venue. *See* (ECF No. 188 at 15-17). Defendant PCI also filed a separate Motion to Transfer Venue pursuant to 28 U.S.C. § 1404. *See generally* (ECF No. 177). Although filed separately and presenting different grounds, these motions request the same relief: transfer of these proceedings to the Central District of California.

### A.   Motion to Dismiss for Improper Venue under Rule 12(b)(3)

Dismissal for improper venue under Rule 12(b)(3) may be granted "only when venue is "wrong" or "improper." *Atlantic Marine Constr. Co. v. U.S. Dist. Court for Western Dist. of Tex.*, 571 U.S. 49, 55 (2013). That question is generally governed by 28 U.S.C. § 1391(b). *Id.* In relevant part, § 1391 provides that a civil action may be brought in: (i) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (ii) a judicial district in which a substantial part of the events or omissions giving rise to the claim

22

occurred, or a substantial part of property that is the subject of the action is situated; or (iii) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.  28 U.S.C. § 1391(b); *Atlantic Marine Constr.*, 571 U.S. at 55-56.

Defendants argue that Plaintiffs have failed to establish venue under § 1391(b).  *See* (ECF No. 188 at 15-17).  Plaintiffs respond that "[t]he Solar Parties were required to bring [p]roceedings supplementary in this Court."  (ECF No. 200 at 19, 21).  Moreover, the SASC alleges that "venue is proper in this district as the underlying cause of action was filed in this district pursuant to proceedings supplementary under Fla. Stat. § 56.29 [and the] action is a continuation of the initial underlying proceeding where the underling [sic] judgment was awarded."  (SASC ¶ 13).

Under Florida law, a supplemental proceeding under § 56.29 is a summary equitable procedure through which a successful plaintiff can discover the judgment debtor's assets and levy on those assets without resort to a second litigation in a different forum. *Katzman v. Comprehensive Care Corp.*, No. 8:17-CV-2107-T-23AEP, 2017 WL 4944802, at *3 (M.D. Fla. Nov. 1, 2017).  Additionally, a supplemental proceeding under § 56.29 must begin in the court that entered judgment.  *Id.* at *6.  Here, based on Plaintiffs' allegations that they are pursuing proceedings supplementary to recover on a Florida arbitration judgment against PCI, the undersigned finds that venue is this District is proper.  *See, e.g.*, *Accelerated Benefits*, 817 So. 2d at 1088 (noting that venue does not shift from jurisdiction to jurisdiction during proceedings supplementary, but remains with the court that entered the judgment).  Accordingly, Defendants' motion to dismiss for improper venue (ECF No. 188) under Rule 12(b)(3) should be denied.[8]

---

[8] Alternatively, the undersigned finds that venue in the Southern District is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of property that is the subject of these post-judgment proceedings supplementary is situated in Florida.  This is not to say that collection efforts may not require seeking additional or different relief in California.  But, at this pleading stage, venue is sufficiently alleged to maintain this action in Florida.

**B.      Motion to Transfer Venue under 28 U.S.C. § 1404**

Through a separate motion, Defendant PCI seeks to transfer venue pursuant to 28 U.S.C. § 1404.  *See generally* (ECF No. 177).  To determine the propriety of transfer to another district, courts conduct a two-step analysis under §1404(a).  *Reichard v. Henderson, Covington, Messenger, Newman & Thomas Co., L.P.A.,* No. 18-CV-61128, 2018 WL 5016285, at *3 (S.D. Fla. Oct. 16, 2018), *aff'd sub nom. Reichard v. Henderson Covington Messenger Newman & Thomas Co*., 779 F. App'x 665 (11th Cir. 2019).  First, courts determine whether the action could have been brought in the venue in which transfer is sought.  *Id*.  Second, courts assess whether convenience and the interest of justice require transfer to the requested forum.  *Id.* (citation omitted).  Here, the action could have been filed in the Central District of California where all Defendants are subject to general jurisdiction.  *See* (ECF No. 177 at 6).  Thus, the Court proceeds directly to step two of the analysis.

In deciding the second step, courts consider several factors, including: (i) the convenience of the witnesses; (ii) the location of documents and other sources of proof; (iii) the convenience of the parties; (iv) the locus of operative facts; (v) the ability of process to compel the attendance of unwilling witnesses; (vi) the relative means of the parties; (vii) the forum's familiarity with the governing law; (viii) the weight accorded a plaintiff's choice of forum; and (ix) trial efficiency and the interests of justice, based on the totality of the circumstances.  *Reichard*, 2018 WL 5016285, at *3 (citation and quotation omitted).  These factors are discussed below.

*1. Convenience of Parties and Witnesses*

The convenience of non-party witnesses is a primary factor in determining whether a motion for transfer of venue should be granted.  *Reichard*, 2018 WL 5016285, at *3.  Here, although Defendants are headquartered in California, Plaintiffs have alleged that Defendants' conduct significant petition gathering business in Florida, including business with at least three

political action committees (who Plaintiffs assert may be potential garnishees) and others.  *See,*

*e.g.,*  (SASC ¶¶ 52, 55, 56); *see also* (ECF No. 193 at 15).  Further, although litigation in Florida

may be substantially less convenient to Defendants, any inconvenience must be weighed against

inconvenience to Plaintiffs, who are based in Florida.  Ultimately, regardless of where the litigation

proceeds, some witnesses and parties may be required to travel a significant distance.  *See, e.g.,*

*BPI Sports*, No. 19-60505-CIV-RS (S.D. Fla. Jan. 9, 2020) (ECF No. 37 at 7-8) (denying

defendant's motion to transfer venue where it would not serve the interest of justice but rather shift

inconvenience from defendant to plaintiff).  This factor does not weigh heavily in favor of transfer.

### 2.  *The Location of Documents and Locus of Operative Facts*

Defendants assert that the "center of gravity for this action is California" in that discovery

would center on documents and witnesses from California.  (ECF No. 177 at 9).  In response,

Plaintiffs assert that "Defendants have performed millions of dollars in business in Florida in 2018

and 2019 and profits have been taken from this state[,] which are subject to the collection efforts

of the Solar Parties in Florida."  (ECF No. 193 at 15).  Moreover, in this era of electronic discovery,

the burden of producing documents in Florida versus California is relieved by technological

advancements, such as electronic document-imaging and retrieval.  *Game Controller Tech. LLC*

*v. Sony Computer Entm't Am. LLC*, 994 F. Supp. 2d 1268, 1274 (S.D. Fla. 2014) (citation omitted).

Thus, this factor also does not weigh in favor of transfer.

### 3.  *Availability of Compulsory Process*

Defendant PCI argues that non-party (and party) witnesses with knowledge of significant

facts reside in California, including prior employees of Defendants, financial institution witnesses,

and accountants.  (ECF No. 177 at 10).  Plaintiffs note that Defendants can obtain the voluntary

attendance of their employees and that Plaintiffs can depose and preserve the testimony of other

California witnesses for use at trial.  (ECF No. 193 at 15).  On balance, this factor weighs slightly in favor of transfer.

### 4.  *The Relative Means of the Parties*

Plaintiffs are a not-for-profit company seeking to collect on a judgment.  (ECF No. 193 at 16).  Defendants Paparella, AAP, and BH-AP are alleged to have significant business revenue and several businesses, including petition gathering in Florida.  (SASC ¶¶ 6-8).  The undersigned finds that, at this juncture, the Solar Parties would suffer hardship if they were required to litigate this case in California.  Defendant PCI, however, has not shown financial or other hardship beyond the inconvenience of having to defend against the claims in Florida.  On balance, this factor weighs against transfer.

### 5.  *The Interest of Justice*[9]

Defendant PCI argues that these proceedings have no unique local connection to Florida whereas California has a strong local interest because the conduct at issue involves California companies, employees, and third parties.  (ECF No. 177 at 11).  The undersigned, however, disagrees.  PCI's arguments ignore: (i) the long history of litigation in this District commencing with an arbitration; (ii) the allegations that PCI and other Defendants conducted millions of dollars in petition gathering business in this state over recent years; and (iii) the litigation stems from proceedings supplementary to collect on a Florida judgment.  Thus, this factor weighs heavily in favor of this litigation remaining in South Florida.

---

[9] Although the parties do not address the factors of trial efficiency and familiarity with the governing law in their briefs, they addressed these factors during the hearing on the Motions, both in oral argument and in a handout presented to the Court.  Upon consideration, however, the undersigned finds that those factors are likely neutral since both Florida and California can undoubtedly efficiently manage this litigation and become familiar with the law, as necessary.

*6. The Weight Accorded to Plaintiffs' Choice of Forum*

When a plaintiff sues in its home forum, "it is reasonable to assume that this choice is convenient." *Nygard v. DiPaolo*, 753 F. App'x 716, 722 (11th Cir. 2018) (citation omitted). "To overcome the presumption against disturbing the plaintiff's choice of forum, [the Eleventh] Circuit has long mandated that district courts must find positive evidence of unusually extreme circumstances . . . ." *Id.* (citation and quotation omitted). Here, Defendants have not demonstrated unusually extreme circumstances that would shift the balance in favor of transfer to California. Thus, Plaintiffs' choice of forum is given substantial deference and weighs in favor of litigation remaining in Florida.

In sum, it is the movant's burden to establish that transfer is warranted. *Game Controller*, 994, F. Supp. 2d at 1272. This burden is high, and a plaintiff's choice of forum "should not be disturbed unless it is clearly outweighed by other considerations." *Id.* Thus, transfer can only be granted where the balance of convenience strongly favors the defendant. *Id.* (citing *Mason v. SmithKline Beechman Clinical Labs*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001)). The undersigned finds that the balance of the above factors weighs in favor of venue in Florida. Accordingly, PCI's Motion to Transfer Venue (ECF No. 177) should be denied.

## IV.    FAILURE TO STATE A CLAIM

Lastly, Defendants seek dismissal of all eight counts in the SASC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF No. 188 at 18-26).

### A.    Standard

To withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court's review of the sufficiency of the Complaint is limited to the allegations presented in the complaint. *See GSW, Inc. v. Long Cty.,*

*Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).   Nevertheless, the Court must also consider the complaint in its entirety, including all documents incorporated into the complaint by reference, and accept all well-pleaded allegations as true.   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215-16 (11th Cir. 2012).   All factual allegations in the Complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor.   *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citations omitted); *see also Roberts v. Fla. Power & Light Co*., 146 F.3d 1305, 1307 (11th Cir. 1998) (citations omitted).   Further, while a plaintiff need not provide "detailed factual allegations," the allegations must consist of more than "a formulaic recitation of the elements of a cause of action."   *Twombly*, 550 U.S. at 555 (citations and quotations omitted).   Conclusory allegations will not prevent dismissal.   *United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 792-93 (11th Cir. 2014) (citation omitted).

### B.   Counts I to IV: Fraudulent Transfers

Counts I through IV of the SASC allege the following fraudulent transfer claims: (i) Count I under § 726.108 against all Defendants; (ii) Counts II and III under § 726.105(1)(a) against Paparella, AAP, and BH-AP, and against Paparella, Mrs. Paparella, Gonzalez-Aplin (as Trustee of the BNVFBVN Trust) and VMAMNTOP, respectively; and (iii) Count IV under § 726.106(1) against Paparella, AAP, and BH-AP.   (SASC ¶¶ 74-133).

Section 726.105 is part of Florida's Uniform Fraudulent Transfers Act ("UFTA"), and lays out a statutory scheme for creditors to set aside a debtor's transfer of assets to a third party under certain circumstances.   *Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1369 (S.D. Fla. 2011) (citation omitted).   The UFTA was adopted to prevent an insolvent debtor from

transferring assets away from creditors when the debtor's intent is to hinder, delay, or defraud any of its creditors. *Id*. (citation omitted).  In relevant part, § 726.105 provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a)  With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (b)  Without receiving a reasonable equivalent value in exchange for the transfer or obligation, and the debtor:
>
> > (1)  Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> >
> > (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Fla. Stat. § 726.105(1).

Because of the difficulty of proving actual intent, case law and the UFTA look to certain evidence of intent, commonly known as 'badges of fraud." *Oginsky*, 784 F. Supp. 2d at 1370.  The UFTA lists eleven nonexclusive "badges of fraud" that may be considered in determining actual intent.[10]  Fla. Stat. § 726.105(2).

Defendants argue that Plaintiffs have failed to allege the elements of intent, conveyance of property, and lack of consideration.  *See generally* (ECF No. 188 at 19-21).  According to

---

[10] These "badges of fraud" include whether: (a) the transfer or obligation was to an insider; (b) the debtor retained possession or control of the property transferred after the transfer; (c) the transfer or obligation was disclosed or concealed; (d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (e) the transfer was of substantially all the debtor's assets; (f) the debtor absconded; (g) the debtor removed or concealed assets; (h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (j) the transfer occurred shortly before or shortly after a substantial debt was incurred; (k) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. Fla. Stat. § 726.105(2).

Defendants, Plaintiffs make conclusory allegations that are formulaic recitations not permitted under the law.  (ECF No. 188 at 19, 20, 21).  In response, Plaintiffs assert that they have sufficiently alleged the claims through specific facts regarding intent, transfer, and lack of consideration,  and attached numerous exhibits in support of their claims.  (ECF No. 200 at 22-23).

Based on a review of the SASC, and accepting the allegations as true, the undersigned finds that Plaintiffs have sufficiently alleged the elements of a UFTA claim.  First, Plaintiffs specifically allege indicia of fraud within the SASC.[11]  For example, in Count I, Plaintiffs allege that Paparella caused the shuttering of PCI and the transfer of all business for his own benefit, as well as the transfer of his personal assets, including the Florida Property, in violation of the UFTA.   (SASC ¶¶ 75-78).   Plaintiffs also allege intent to defraud, conveyance of property, and lack of consideration in Counts II through IV.   *See, e.g.*, (SASC ¶ 88) (Count II) ("PCI made the transfers to Paparella, AAP, and/or BH-AP with the intent to: a. hinder the collection efforts of Judgment Creditors; b. delay the collection efforts of Judgment Creditors; and/or c. defraud the Judgment Creditors); (*Id*. ¶ 97) (Count III) ("In addition to directing the fraudulent transfers and creation of alter ego/mere continuation/successor entities to hinder, delay or defraud Judgment Creditors, to prevent recapture of profit distributions, Paparella also began transferring his personal assets as well,"   followed   by   details   of   the   transfer   of   the   Florida   Property);

---

[11] The SASC alleges that: (a) the transfers were made to Paparella, Mrs. Paparella, AAP, BH-AP, Gonzalez-Aplin and VMAMNTOP, who constitute insiders; (b) PCI and Paparella, through their alter egos, maintained possession or control of the property and assets transferred; (c) the transfers were concealed; (d) before the transfers was made, PCI had been sued or threatened with suit; (e) before the transfers were made, Paparella was aware of his responsibility to disgorge profits received that were not paid to the Judgment Creditors; (f) the transfers were of substantially all of PCI's assets; (g) PCI absconded, removed or concealed assets; (h) the value of the consideration received by for assets was not reasonably equivalent to the value of the assets transferred or the amount of the obligations incurred; (i) PCI was insolvent or became insolvent shortly after the transfers were made or the obligations were incurred; (j) the transfers occurred shortly before or shortly after a substantial debt was incurred; (k) PCI transferred the essential assets of the business to a lienor who then transferred the assets to an insider of PCI.  (SASC ¶ 69).

(*Id.*¶ 105) (Count IV) ("PCI has hindered, delayed and defrauded the Judgment Creditors, who have therefore been damaged.").

Accordingly, the undersigned finds that Plaintiffs have sufficiently alleged claims for fraudulent transfer under the UFTA and the motion to dismiss as to Counts I to IV should be denied.

### C.  Counts V and VII: Mere Continuation and De Facto Merger

In Counts V and VII, Plaintiffs allege mere continuation liability (Count V) and de facto merger liability (Count VII) against Paparella, AAP , and BH-AP.  (SASC ¶¶ 106-116, 134-151).  Defendants argue that Plaintiffs must allege that AAP and BH-AP "absorbed" PCI though a sale.  (ECF No. 188 at 22).  The undersigned disagrees.

First, the concept of continuation of business arises where the successor corporation is merely a continuation or reincarnation of the predecessor corporation under a different name. *Sculptchair*, 94 F.3d at 630 (citing *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 154 (Fla. 4th DCA 1994)).  A "mere continuation of business" will be found where one corporation is absorbed by another, *as evidenced by* an identity of assets, location, management, personnel, and stockholders.  *Sculptchair*, 94 F.3d at 630 (emphasis added).  Here, Plaintiffs allege that both AAP and BH-AP "began operating the same business, using many of the same employees, vendors, officers and owners of PCI at the same location and with many of the same trade tools, equipment, intellectual property and the like."  (SASC ¶¶ 111, 125, 128).  The allegations in the SASC are substantively similar to allegations that courts have considered sufficient at this preliminary stage of the proceedings in other cases.  *See, e.g.*, *Sculptchair*, 94 F.3d at 630 (finding that new company was "nothing more than operating under a new name" in that its officers/directors/shareholders were the same as in the predecessor company, and the new company marketed the same type of product out of the same location as the predecessor).  Thus, the SASC sufficiently alleges a claim

for "mere continuation of business" under Count V and the motion to dismiss this Count should be denied.

Similarly, in *Amjad Munim, M.D., P.A. v. Azar*, the Florida District Court of Appeal concluded that "a de facto merger occurs when one corporation is absorbed by another, i.e., there is a continuity of the selling corporation evidenced by such things as the same management, personnel, assets, location and stockholders. . . . The bottom-line question is whether each entity has run its own race, or whether there has been a relay-style passing of the baton from one to the other." *Amjad Munim*, 648 So. 2d at 154 (citations omitted). Here, within Count VII, Plaintiffs allege that "AAP absorbed PCI and began operating the same business, using many of the same employees, vendors, officers and owners of PCI at the same location and with many of the same trade tools, equipment, intellectual property and the like. AAP assumed the liabilities of PCI and continued operating as before." (SASC ¶ 142). Thus, Defendants' arguments are unavailing and the motion to dismiss Count VII should be denied.

### D.  Count VI: Alter Ego

Count VI alleges a claim for alter ego liability against Paparella, AAP, and BH-AP. (SASC ¶¶ 117-133). Defendants argue that Plaintiffs fail to allege that Paparella dominates PCI, AAP, or BH-AP. *See* (ECF No. 188 at 23-25). Further, according to Defendants, "the mere fact that one individual owns and controls the stock structure of a corporation does not inevitably lead to the conclusion that the corporate entity is a fraud or the alter ego of its stockholders." (*Id*. at 23) (citing *S-Fer Int'l, Inc. v. Stonesheets, LLC*, No. 14-24662-CIV, 2016 WL 8808749, at *3 (S.D. Fla. July 22, 2016)).

Under Florida law, to "pierce the corporate veil," the plaintiff must prove that: (i) the shareholder dominated and controlled the corporation to such an extent that the corporation had no independent existence and the shareholders were in fact alter egos of the corporation; (ii) the

corporate form must have been used fraudulently or for an improper purpose; and (iii) the

fraudulent or improper use of the corporate form caused injury to the claimant. *Molinos Valle Del*

*Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (citations omitted).

Moreover, the Eleventh Circuit has enumerated a "laundry list of factors" to be used to

determine the extent of control.[12] *Damian*, 2019 WL 5887360, at *8 (citing *United Steelworkers*

*of Am., AFL-CIO-CLC v. Connors Steel Co.*, 855 F.2d 1499, 1505 (11th Cir. 1988)).  The party

seeking to pierce the corporate veil need not allege all of the factors, but enough of the factors

must exist to indicate the necessary degree of control by one company over the other to constitute

an alter ego relationship.  *Id.*

Here, Count VI specifically alleges that: (i)  Paparella is the owner of PCI, AAP and BH-

AP (SASC ¶ 118); (ii) AAP and BH-AP were formed by Paparella, who dominates and controls

PCI, AAP and BH-AP and all of the business done by those entities (*Id.* ¶ 120); (iii) Paparella

controlled and dominated PCI, AAP and BH-AP in order to keep the substantial profits generated

by his businesses rather than pay them to the Judgment Creditors (*Id.* ¶ 121); (iv) Paparella

dominated and controlled PCI to take actions to avoid paying the Judgment, such as selling a

property it owned in Puerto Rico in late 2018 and taking steps to re-route the sales proceeds.

Rather than ensuring that PCI was paid the sale proceeds, Paparella directed that the "proceeds"

be wired to Hungary, to an offshore trust at his attorneys address to make an unsecured loan (*Id.*

---

[12] The factors include whether: (i) the parent and the subsidiary have common stock ownership;
(ii) the parent and the subsidiary have common directors or officers; (iii) the parent and the
subsidiary have common business departments; (iv) the parent and the subsidiary file consolidated
financial statements and tax returns; (v) the parent finances the subsidiary; (vi) the parent caused
the incorporation of the subsidiary; (vii) the subsidiary operates with grossly inadequate capital;
(viii) the parent pays the salaries and other expenses of the subsidiary; (ix) the subsidiary receives
no business except that given to it by the parent; (x) the parent uses the subsidiary's property as its
own; (xi) the daily operations of the two corporations are not kept separate; and (xii) the subsidiary
does not observe the basic corporate formalities, such as keeping separate books and records and
holding shareholder and board meetings. *Damian*, 2019 WL 5887360, at *8 (citation omitted).

¶ 122); (v) Paparella, AAP and BH-AP are alter egos of each other and of the Judgment Debtor and "this Court should pierce the corporate veil, pursuant to Fla. Stat. §56.29, the Uniform Fraudulent Transfer Act and Florida case law." (*Id*. ¶ 133).

Plaintiffs have also incorporated by reference into Count VI the following allegations: (i) Paparella, as legal and/or beneficial owner of the assets of PCI – which operated under his sole direction and control – directed the closing of PCI and the opening of successor corporate entities (AAP and BH-AP) to hinder, delay or defraud the Judgment Creditors and avoid the payment of the debt owed to them, and is causing AAP and BH-AP to continue paying himself compensation, including profit distributions (*Id*. ¶ 35); (ii) all of [the alleged acts] were directed by Paparella, by virtue of his complete dominion and control of the other Impleaded Defendants. The transfer of assets and creation of the alter egos/mere continuation entities, AAP and BH-AP, by Paparella and PCI were made with the actual intent to fraudulently to hinder, delay or defraud Judgment Creditors (*Id*. ¶ 68).

Against these allegations and supporting exhibits, the undersigned finds that Plaintiffs have alleged sufficient facts to support alter ego liability.  Moreover, Plaintiffs need not prove alter ego liability at this stage of the proceedings.  *See, e.g.*, *Damian*, 2019 WL 5887360, at *9 (listing cases where courts have allowed allegations of alter ego to proceed at the pleading stage with very little support).  Accordingly, the motion to dismiss Count VI should be denied.

### E.  Count VIII: Unlawful Distributions under California Corporation Code

Count VIII alleges a claim for unlawful distribution under California Corporation Code §§ 501 and 506.  (SASC ¶¶ 152-155).  Defendants assert that Count VIII fails to allege a wrongful distribution.  (ECF No. 188 at 25-26).

California Corporations Code § 501 prohibits distributions that would render the corporation "likely unable to meet its liabilities." Cal. Corp. Code. § 501.  Further, § 506

establishes who may bring an action and against whom they may bring it.  Cal. Corp. Code. § 506; *see also Credit Managers Ass'n of S. California v. Federal Co.*, 629 F. Supp 175, 188 (C.D. Cal. 1985).   Shareholders who knowingly received prohibited distributions are "liable to the corporation for the benefit of all creditors."  *Id.* (quoting Cal. Corp. Code § 506(a)).  "Suit may be brought in the name of the corporation to enforce the liability by any one or more creditors of the corporation whose debts or claims arose prior to the time of the distribution to shareholders." Cal. Corp. Code § 506(b).

Contrary to Defendants' assertions, in Count VIII Plaintiffs allege that: (i) Paparella (his alter egos, affiliates or wholly owned entities), including AAP and/or BH-AP, received transfers from PCI within the four-year period preceding the Filing Date in the sum of at least $4,000,000 (SASC ¶ 153); (ii) as to each transfer from PCI to Paparella, AAP, and/or BH-AP in the four-year period preceding the Filing Date, Paparella consented to distributions made in violation of Cal. Corp. Code § 501 and, in consenting to the distributions, failed to comply with that statute (*Id.* ¶ 154); and (iii) Paparella is personally liable to PCI and its creditors for the amounts of such distributions that exceed the amount that could have been distributed pursuant to Cal. Corp. Code §§ 501, 506.  (*Id.* ¶ 155).

Based on these allegations and posture of these proceedings supplementary, the undersigned finds that Plaintiffs have sufficiently stated a claim for unlawful distribution under California law.  Accordingly, Defendants' motion to dismiss Count VIII should be denied.

## V.   **RECOMMENDATION**

For the reasons stated above, the undersigned respectfully **RECOMMENDS** that the:

1.     Motion to Transfer Venue (ECF No. 177) be **DENIED**;

2.      Motion to Dismiss (ECF No. 188) be **GRANTED IN PART AND DENIED IN PART**.  Specifically, (i) Defendants' motion to dismiss Defendants Paparella, AAP, and BH-AP for lack of personal jurisdiction should be **DENIED**; (ii) Defendants' motion to dismiss Defendants Mrs. Paparella, Gonzalez-Aplin (as Trustee of BNVFBVN Trust), and VMAMNTOP for lack of personal jurisdiction should be **GRANTED**; (iii) Defendants' motion to dismiss for improper venue should be **DENIED**; and (iv) Defendants' motion to dismiss for failure to state a claim should be **DENIED**.

Within **fourteen (14)** days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations.  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R.  3-1 (2020); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on July 2, 2020.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:  U.S. District Judge Rodney Smith
      All Counsel of Record