UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CV-62688-SMITH/VALLE

FLORIDIANS FOR SOLAR
CHOICE, INC., a Florida not for
profit corporation, and SOUTHERN
ALLIANCE FOR CLEAN ENERGY,
INC., a Tennessee Corporation,

    Plaintiff/Judgment Creditors,

v.

PCI CONSULTANTS, INC., a California corp.,

    Defendant/Judgment Debtor,

and

ANGELO PAPARELLA, individually,

    Defendants.[1]

_____

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Floridians for Solar Choice, Inc.'s ("FSC's") Application for Appellate Attorneys' Fees (the "Motion"). (ECF Nos. 241, 242). United States District Judge Rodney Smith has referred this action to the undersigned for appropriate disposition of all post-judgment matters. (ECF No. 194). The undersigned has reviewed the Motion, Defendant PCI Consultant, Inc.'s ("PCI's") Objection (ECF No. 241 at 59-83), FSC's Reply (ECF No. 241 at 84-101), the Joint Notice of Transfer to the District Court (ECF No. 246), and FSC's

---

[1] The case caption on appeal differed slightly in that FSC and SACE (as defined herein) were appellees, and PCI (as defined below) was the appellant. Further, the appeal did not include the third parties that were added to the litigation post-judgment. For ease of reference, this caption reflects the current position in the District Court of the parties who were involved in the appellate proceedings.

Notice of Previously Awarded Fees and Costs (ECF No. 305), and is otherwise duly advised in the matter. Accordingly, the undersigned recommends the Motion be **GRANTED IN PART AND DENIED IN PART**. For the reasons discussed below, FSC should be awarded $101,590.34 in attorneys' fees.

## I. BACKGROUND

The procedural history of this case is set forth in the prior opinions of the District Court and Eleventh Circuit, which are incorporated by reference. *See* (ECF No. 238) (Report and Recommendation on Motion to Transfer Venue and Defendants' Motion to Dismiss); (ECF No. 274) (Order Affirming and Adopting in Part Report of Magistrate Judge); *Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, No. 15-CV-62688, 2020 WL 6808669, at *1 (S.D. Fla. July 2, 2020), *report and recommendation adopted in part*, 2020 WL 5757083 (S.D. Fla. Sept. 28, 2020). These proceedings generally stem from an unsatisfied judgment for more than $2 million affirming an arbitration award in favor of FSC and Southern Alliance for Clean Energy ("SACE," and together with FSC, the "Solar Parties"), and against PCI.

On March 3, 2020, the Eleventh Circuit affirmed the District Court in confirming the arbitration award. (ECF No. 222); *Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, No. 15-CV-62688, 2020 WL 1027662 (11th Cir. Mar. 3, 2020). On May 8, 2020, FSC filed the Motion before the Eleventh Circuit. *See* (ECF No. 241 at 10). On June 22, 2020, PCI filed its objection to the Motion. *Id.* at 81. On July 1, 2020, FSC filed its Reply. *Id.* at 101. Thereafter, on July 8, 2020, on its own motion, the Eleventh Circuit transferred the Motion to the District court for consideration of entitlement and the reasonable amounts, if any. *Id.* at 1.

In its Motion, FSC seeks $106,937.20 in attorneys' fees.[2] *Id.* at 6. PCI objects to the Motion on several grounds, including: (i) requesting a significant reduction based on SACE's involvement in the case; and (ii) challenging the reasonableness of counsel's hourly rates and hours expended. *See generally* (ECF No. 241 at 59-83).

## II. DISCUSSION

### A. Entitlement to Attorneys' Fees

Under the "American Rule," litigants are not entitled to an award of attorneys' fees for prevailing in litigation "unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 253 (2010) (citations omitted); *In re Martinez,* 416 F.3d 1286, 1288 (11th Cir. 2005) (prevailing litigants are generally not entitled to an award of attorneys' fees unless provided by statute or contract). Here, the Agreement between FSC and PCI establishes a contractual relationship between these two parties. (ECF No. 1-5, the "Agreement"). More specifically, the Agreement provides that in the event that either party (i.e., FSC or PCI) resorts to legal action, including arbitration, the prevailing party shall be entitled to reimbursement from the non-prevailing party for all reasonable attorneys' fees and costs, including pretrial, trial, and appeal. *Id.* at 9; *see also Interim Healthcare, Inc. v. Health Care@Home, LLC*, No. 17-CV-61378, 2019 WL 6791465, at *1 (S.D. Fla. Nov. 27, 2019), *report and recommendation adopted*, 2019 WL 6769666 (S.D. Fla. Dec. 12, 2019) (awarding attorneys' fees to prevailing party under a contract); *Marlite, Inc. v. Eckenrod*, No. 09-22607-CIV, 2011 WL 31095, at *2 (S.D. Fla. Jan. 5, 2011) (same). FSC (and SACE) obtained Final Judgment in their favor and are the prevailing

---

[2] FSC initially sought $107,211.55, but conceded that some of the initial fees requested were not appropriate. Thus, in its Reply, FSC seeks a reduced amount in fees. *Compare* (ECF No. 241 at 6) (seeking $107,211.55 in fees ) *with* (ECF No. 241 at 88) (seeking a reduced amount of $106,937.20).

3

parties. *See generally* (ECF No. 222).  Consequently, there is no dispute that FSC is entitled to reimbursement for its reasonable attorneys' fees and costs pursuant to the Agreement.  The only issues before the Court are whether the fees should be *reduced* based on SACE's involvement in the appellate proceedings and whether there are any billing inefficiencies that require adjustment. PCI's objections are discussed, in turn, below.

### B.  SACE's Involvement in the Appeal Does not Warrant a Reduction

PCI summarily objects to FSC's request for fees incurred for work on behalf of SACE. *See* (ECF No. 241 at 65*)*.  Critically, however, PCI does not identify any time entries that relate solely to SACE's claims, nor does it propose a specific percentage or reduction for SACE's involvement, or provide authority for its position.  Indeed, PCI concedes that "there had to have been some overlap of efforts" between the claims of FSC and SACE.  *Id.*  PCI, nevertheless, seeks a "substantial reduction to avoid a windfall" to SACE.  *Id*.  In reply, FSC notes that there were no issues related solely to SACE and references the Eleventh Circuit affirmance of the arbitration. (ECF No. 241 at 88-89); *see also Floridians for Solar Choice,* 802 F. App'x at 520.  The Eleventh Circuit itself noted that SACE had "similar claims against PCI [and] was added as a respondent in the arbitration proceedings." *Floridians for Solar Choice*, 802 F. App'x at 522.  Moreover, the Eleventh Circuit made no distinction in the claims between FSC and SACE.  Rather, the Court affirmed the arbitration award in favor of the Solar Parties collectively and found no error in the arbitration procedure.  *Id.* at 520.  Therefore, although only FSC is a party to the Agreement, it

4

does not appear that having SACE join the litigation resulted in additional legal effort that would warrant a reduction in the requested fees.

Moreover, a review of the billing records (ECF No. 241 at 35-101) confirms that there are no significant time entries related solely to SACE's claims.[3] Rather, the appellate case involved the Solar Parties' unified objective to affirm the arbitration award. Thus, on the facts of this case, FSC has met its burden of showing that the legal representation benefitted the Solar Parties, without distinction. Accordingly, the undersigned finds that a fee reduction for SACE's involvement in the appeal is unwarranted. *Cf. Earthcam, Inc. v. OxBlue Corp.*, 658 F. App'x 526, 532 (11th Cir. 2016) (reducing fees incurred for federal claims where tasks were uniquely related to that claim and not state claim).

### C. The Lodestar Method of Determining Reasonable Fees

Courts in the Eleventh Circuit use the "lodestar" method to calculate the value of an attorney's services. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Under the lodestar method, a court first determines the reasonable rate of an attorney's services and then determines if the hours expended by counsel are reasonable. *Id.* at 1299-1302. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* at 1299. The relevant legal community is "the place where the case is filed." *ACLU v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quotations and citation omitted). The movant "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," and

---

[3] The time records do include one reference to "SACE." *See* (ECF No. 241 at 41) (11/7/2018 entry for .2 hours for "[r]eview 11th Circuit Order adding SACE to the Appeal; file . . . Notice of Appearance."). This de minimus entry of $94, however, is insufficient grounds for excluding significant fees.

5

"[s]atisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299. Here, the relevant legal community is South Florida.

When determining whether the number of hours expended by counsel is reasonable, the court "must deduct time spent on discrete and unsuccessful claims." *Id.* at 1302 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). Further, where a court finds the number of hours claimed by counsel is unreasonably high, the court may conduct an hour-by-hour analysis or reduce the requested hours with an across-the-board cut, but not both. *Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). Courts need not become "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The essential goal for the court is to "do rough justice, not to achieve auditing perfection." *Id.*

### 1. Reasonable Hourly Rates

In determining reasonable hourly rates in South Florida, the undersigned may also consider certain factors, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing factors articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (the "*Johnson* factors")).[4] The Court also may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either

---

[4] The Eleventh Circuit has adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

with or without the aid of witnesses as to value. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (quoting *Norman*, 836 F.2d at 1303).

Here, FSC seeks an award for the legal services of five attorneys at the firms of GrayRobinson, P.A. and Lubell Rosen, LLC, respectively. (ECF No. 241 at 5-6). For ease of reference, the individual attorneys and their requested hourly rates are summarized below.

| Timekeeper | Years of Experience/ Position (ECF No. 241) | Requested Blended Hr. Rate (ECF No. 241 at 5-6) |
|---|---|---|
| Scott Cagan | 30 years – shareholder @ GrayRobinson (p. 20-21) | $457.25 |
| Robert Weill | 26 years – of counsel @ GrayRobinson (p. 26) | $376.58 |
| Marshall Adams | 33 years – partner @ Lubell Rosen (p. 31) | $450.00 |
| Jarad Gibson | 5 years – associate @ Lubell Rosen (p. 32) | $275.00 |

PCI objects to "fees billed at premium rates." *Id.* at 65. More specifically, although PCI concedes that counsel's rates "may not be unreasonable in the South Florida market per se," it argues that the work should have been undertaken by "lower-billing attorneys" and not partners with higher billing rates. *Id.* at 66. Consequently, PCI requests that 75% of counsel's hours (after reduction for unreasonable, redundant, or duplicative work) be compensated at $250/hr for all attorneys. *Id.* at 69.

The undersigned disagrees for several reasons. First, the hourly rates for FSC's counsel are reasonable for the South Florida community. *See, e.g., Garcia v. J & J, Inc.*, No. 19-CV-60728, 2021 WL 633377, at *6 (S.D. Fla. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 616529 (S.D. Fla. Feb. 17, 2021) (awarding $350/hr to attorneys with significantly less years of experience than counsel in this case (i.e., 9-10 years).[5] Second, in these proceedings, the

---

[5] FSC has also referenced persuasive authority that attorneys of similar experience in the South Florida community are compensated at comparable rates. *See* (ECF No. 241 at 91-92 n.3) (listing cases awarding fees at similar hourly rates as FSC's counsel).

District Court has previously awarded similar hourly rates to the same attorneys for fees resulting from sanctions in favor of the Solar Parties related to a prior discovery dispute.[6]  Moreover, as noted above, in determining reasonable hourly rates the undersigned may also consider the attorneys' customary fee, the skill required to perform the legal services, and the attorneys' experience, reputation and ability. *Mallory*, 923 F. Supp. at 1555.  Here, FSC's counsel's hourly rates are customary for the appellate work performed.  (ECF No. 241 at 21- 22, 26-27, 31).  This conclusion is supported by the fact that two of PCI's attorneys billed at the same $450/hr, with a third partner billing at $350,  and an associate at $250.[7]  *Id.* at 66-67.  Moreover, the hourly rates, skill, and experience of counsel to the Solar Parties is comparable to those of counsel to PCI.  For example, attorney Cagan (billing at $450/hr) has been practicing law since 1989, and previously served as a federal law clerk, authorized several publications, and tried numerous cases and arbitrations in state and federal courts.  *Id.* at 20-21.  Similarly, attorney Weill (billing at $450/hr) has been practicing law for approximately 26 year, has handled hundreds of appeals in state and federal courts, and authored numerous articles. *Id.* at 25-26.  Further, attorney Adams (also billing at $450/hr) has approximately 33 years of commercial litigation experience in state and federal courts, having tried more than 50 cases.  *Id.* at 30-31.  Lastly, associate Cagan has approximately five years of experience and bills at $275/hr, comparable to associate Andrews who represents PCI.  *Compare* (ECF No. 241 at 32) *with* (ECF No. 241 at 67).  Thus, it is disingenuous for PCI

---

[6] Specifically, on June 17, 2019, the Court granted sanctions in favor of the Solar Parties wherein attorneys Adams and Gibson billed at $450 and $275 an hour, respectively.  (ECF No. 305 at 2); *see also* (ECF Nos. 101 at 3, 107, 108).

[7] Specifically, counsel to PCI included attorneys Goodman, Kunz, and Andrews.  Attorney Goodman was a founding partner of the firm of Devine Goodman & Rasco and litigated in federal and state courts since approximately 1988.  (ECF No. 241 at 80).  Attorney Goodman billed at $450/hr.  Attorney Kunz has been a commercial litigator for approximately 24 years, and also bills at $450/hr.  *Id.*  Lastly, associate Andrews, who has approximately five years of experience, bills at $250/hr.  *Id.*

to argue that FSC's litigation counsel should be compensated at lower rates than that of its attorneys.

The undersigned also finds that this is not a case of "billing at premium rates" as PCI suggests. (ECF No. 241 at 65-66). Rather, FSC explains that the staffing was efficient, where lead counsel continued to work on the appeal to avoid unnecessary costs of a new attorney learning the case. *Id.* at 90. According to FSC, the appeal involved: "(a) a significant amount of motion practice that was engendered by [PCI's] conduct and refusal to accede to routine motions; (b) a voluminous record from two proceedings below—an arbitration proceeding and district court proceedings to confirm the arbitration award; and (c) [PCI] had to file amended opening and reply briefs because its initial filings contained facts and argument relating to extra-record evidence." *Id.* at 27.

The Court is also unpersuaded by PCI's reliance on *Hermosilla v. Coca Cola*, 2011 WL 9364952 (S.D. Fla. Jul. 15, 2011) and other cases for the proposition that these proceedings involved "premium billing rates." *Id.* at 67-68. Rather, *Hermosilla* involved counsel from out-of-state, with "extraordinary rates," handling a copyright infringement case in the Southern District that had no complex or unusual issues. *Hermosilla,* 2011 WL 9364952, at *9. The court in *Hermosilla* substantially reduced the hourly rates to a blended rate to "most closely approximate[] a rate for a competent and reasonably priced partner in [the South Florida] market who could successfully handle a case of [that same] magnitude." *Id*. No such reduction is appropriate here. Additionally, contrary to PCI's argument, the court in *Daggett v. Kimmelman*, 811 F.2d 793, 799 (3d Cir. 1987) concluded that "the staffing of [the] case by counsel . . . seems to have been more

9

wise than top-heavy." *Daggett*, 811 F.2d at 799.[8] Thus, PCI has not provided persuasive authority for an overall reduction of FSC's counsel's hourly rates.

Lastly, the Court is "deemed an expert on the issue of hourly rates in this community and may properly consider 'its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'" *Fiedler v. Anglin's Beach Café, LLC*, No. 15-60989, 2017 U.S. Dist. LEXIS 189449, 2017 WL 1278632, at *1 (S.D. Fla. April 3, 2017) (quoting *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)). Accordingly, based on their experience, qualifications, and the prevailing market rates in South Florida, the undersigned recommends that FSC counsel receive the hourly rates requested, without reduction.

### 2. Reasonable Hours Expended

Having determined counsel's reasonable hourly rates, the undersigned next determines the reasonableness of the hours expended by the attorneys working on the case. As a general rule, attorneys must exercise what the Supreme Court has termed "billing judgment." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). That means they must exclude from fee applications "excessive, redundant, or otherwise unnecessary hours," which are hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Norman*, 836 F.2d at 1301 (quotations and citations omitted).

Importantly, "if fee applicants do not exercise billing judgment, courts are obligated to do it for them." *ACLU*, 168 F.3d at 428. The fee applicant also bears the burden of providing specific and detailed evidence so that the court can determine the necessity and reasonableness of the time claimed for the action. *Id*. at 427, 432-33. In the end, however, "exclusions for excessive or

---

[8] *Daggett* is also not persuasive because it is non-binding on this Court.

unnecessary work on given tasks must be left to the discretion of the district court." *Norman*, 836 F. 2d at 1301.

Here, the undersigned is unpersuaded that FSC's counsel has "padded" the file as PCI suggests, (ECF No. 241 at 71-74), or performed duplicative work not already discounted.[9] In reply to PCI's argument that more than one attorney billed for conferences, FSC's counsel sufficiently explains that it has voluntarily reduced more than $11,000 in fees to account for potential duplication of efforts.[10] (ECF No. 241 at 96). FSC also explains that the division of labor between the different attorneys, where the appellate practitioner (attorney Weill) prepared all first drafts, followed by arbitration counsel (attorneys Cagan and Adams) providing revisions, toward a final draft. *Id.* at 97. Lastly, FSC sufficiently rebuts PCI's argument that this action was simple and asserts that the number of hours expended resulted from PCI's efforts during the appeal, which required two opening and reply briefs, and extensive motion practice.[11] *Id.* at 95.

Nevertheless, the Court has reviewed counsel's billing records and finds that a small adjustment is necessary to account for certain billing inefficiencies beyond those raised by PCI.

---

[9] For example, PCI lists 17 time entries out of hundreds of entries for the proposition that FSC counsel expended .2 hours (12 minutes) reviewing routine documents. The billing entries, however, contain more detailed descriptions than PCI asserts. *Compare* (ECF No. 271 at 71) (listing 8/14/18: "Read notice of appearance") *with* (ECF No. 241 at 38) (listing 8/14/2018: "Receipt and review of the appearance of counsel filed by Levi Lesches for PCI Consultants"); (ECF No. 271 at 71) (listing 9/28/2018: "Read order setting new deadline for the initial brief") *with* (ECF No. 241 at 39) (listing 9/28/2018: "Receipt and review of the Order from the Eleventh Circuit setting the new deadline for the initial brief and the appendix"). PCI also argues that FSC counsel double billed for conferences and duplicative efforts. *See generally* (ECF No. 241 at 74-75). But, as PCI concedes, FSC counsel has already reduced its requested fees by several hours. *Id.* at 74 n.7. Thus, the undersigned rejects PCI's request for additional reductions on these bases.

[10] More specifically: (i) attorney Cagan has reduced his time by 83.7 hours ($1,829); (ii) attorney Weill by 24 hours ($9,037.92); and attorney Adams has reduced 12 hours related to the Eleventh Circuit mediation program. (ECF No. 241 at 22, 27, 31).

[11] FSC has also rebutted PCI's argument that counsel is seeking 15-20% above its actual rate. *See* (ECF No. 241 at 70-71). Rather, FSC confirms that it is not seeking to recover from PCI more than it has invoiced the client. *Id*. at 92 (confirming that counsel has excluded approximately

*See generally* (ECF No. 241 at 35-101). Here, the undersigned's review of the billing records reveals that a few of the time entries include instances of inappropriate "block billing." "Block billing" is the practice of including multiple distinct tasks within the same time entry. *See Interim Healthcare* 2019 WL 6791465, at *6. To illustrate, without indicating how much time was spent on each task, the one hour time entry for 7/12/2018 reflects "[c]onference with Robert Weill . . . regarding courses of action; review case law supporting remand to district court to enter judgment; review underlying FSC contract (section 18) in which parties consented to judgment upon issuance of arbitration award." *Id.* at 37. Similarly, on 6/3/2019, FSC counsel billed four hours to "[r]evise 11th Circuit Brief; review PCI's motion to set aside Arbitration Award filed with Arbitrator; and its motion to vacate, to incorporate key admissions; research decisions post-Bonar on requirements to vacate an arbitration award based on fraud; analyze cases to cite." *Id.* at 45. Further, on 6/11/2019, FSC counsel billed 3.5 hours to: "[r]evise 11th Circuit Brief; conference with Robert Weill regarding analysis of PCI's arguments and [FSC's] rebuttal; review Mr. Adams' draft of "fact" section; conference with Mr. Adams; prepare excerpt on PCI's Motion to Disqualify Arbitrator . . . ."[12] *Id.* at 46.

While the undersigned does not doubt that counsel worked in good faith on the projects attributed to this case, the Court must be able to verify the need or relatedness of those projects before it can approve payment for the time incurred. *Interim Healthcare*, 2019 WL 6791465, at

---

$5,400 for appellate mediation). The undesigned also notes that FSC has already discounted $274.35 for erroneous time entries. *Id.* at 98.

[12] The following entries provide additional examples of block billing: (i) 6/6/2019 entry for 2.5 hours for "[c]onference with Robert Weill regarding analysis of [FSC's] key points in 11th Circuit Brief; review Mr. Weill's email on our Supplemental Appendix requirements; revise Brief." (ECF No. 241 at 45); and (ii) 6/12/2019 entry for 1.8 hours for "[c]onference with Robert Weill regarding revisions to 11th Circuit Brief; revise section on PCI's Motion to Disqualify Arbitrator; conference with Mr. Adams regarding fact section; review Arbitration transcript for excerpts to incorporate." *Id.* at 46.

\*6 (citation omitted). Because of block billing, however, it is impossible for the undersigned "to ascertain how much time was spent on each task." *Dial HD, Inc. v. ClearOne Commc'ns, Inc.*, 536 F. App'x 927, 931 (11th Cir. 2013); *Maiden Specialty Ins. Co. v. Three Chefs & a Chicken, Inc.*, No. 12-22724-CIV, 2014 WL 11429052, at \*10 (S.D. Fla. Jan. 28, 2014), *report and recommendation adopted*, 2014 WL 11429053 (S.D. Fla. Mar. 13, 2014) (reducing fees for block billing where court was unable to determine if the amount of time spent on each task was reasonable); *Estrada v. Alexim Trading Corp.*, No. 10-23696-CIV, 2012 WL 4449470, at \*11 (S.D. Fla. Sept. 26, 2012) (reducing hours for block billing, where counsel failed to separate the entries to allow the court to properly determine whether a reasonable amount of time was spent reviewing a particular filing as opposed to conferring about the filing).

For the foregoing reasons, the undersigned concludes that a minor reduction in the requested fees is appropriate.[13] Rather than conducting an hour-by-hour analysis of counsel's time entries, the undersigned recommends an across-the-board 5% reduction to the amount of fees requested to account for counsel's block billing. *See, e.g., Interim Healthcare*, 2019 WL 6791465, at \*6 (recommending a 10% reduction for billing inefficiencies); *Ovalle v. Perez*, No. 16-CV-62134, 2017 WL 7792719, at \*2 (S.D. Fla. Nov. 9, 2017), *report and recommendation adopted*, 2017 WL 7796183 (S.D. Fla. Nov. 30, 2017) (adopting a 10% reduction for use of block billing, redacted time entries, and redundancy in efforts); *Shipping and Transit, LLC v. 1A Auto, Inc.*, 283 F. Supp. 3d 1290 (S.D. Fla. 2017) (adopting 15% reduction in fees based on billing inefficiencies);

---

[13] A minor reduction would also account for alleged billing insufficiencies resulting from potentially excessive or duplicative work not already discounted by FSC. For example, PCI lists several entries where it argues FSC counsel double-billed for conferences between attorneys. *See* (ECF No. 241 at 74-75). Although the undersigned does not find these entries to contain duplicative efforts, some of the entries identified as inappropriate block billing include conferences among counsel where the Court is unable to ascertain the time spent on that specific task. *See supra* at p. 12.

*Rubenstein v. Fla. Bar*, No. 14-CV-20786, 2015 WL 1470633, at *4-6 (S.D. Fla. Mar. 31, 2015), *report and recommendation adopted*, 2015 WL 11216722 (S.D. Fla. Apr. 22, 2015) (adopting a 30% reduction to counsel's hours for use of block billing); *see also Bivins*, 548 F.3d at 1350 (noting that when the number of hours claimed is unreasonably high, a court may conduct an hour-by-hour analysis or may reduce the requested hours with an across-the-board cut). Consequently, the undersigned recommends that FSC be awarded $101,590.34 in attorneys' fees.[14]

### III.  RECOMMENDATION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that FSC's Application for Appellate Attorneys' Fees (ECF Nos. 241, 242) be **GRANTED IN PART AND DENIED PART**. FSC should be awarded $101,590.34 in attorneys' fees.

Within **seven (7) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2020); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on March 4, 2021.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:  U.S. District Judge Rodney Smith
　　 All Counsel of Record

---

[14] This amount consists of $106,937.20 (the amount requested after voluntary reductions) x .95 = $101,590.34 (reflecting 5% reduction for billing inefficiencies). *See Dial HD,* 536 F. App'x at 931 (noting that where an hour-by-hour review is impractical, the Court can cut either the total number of hours or the lodestar amount).